Commonwealth *v.* Friedman, Appellant.

Argued September 19, 1960. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ. (GUNTHER, J., absent).

*Thomas D. McBride,* with him *Michael von Moschzisker, Victor Wright,* and *McBride, von Moschzisker & Bradley,* for appellant.

*Arlen Specter,* Assistant District Attorney, with him *Domenick Vitullo,* Assistant District Attorney, *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WATKINS, J., November 16, 1960:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Philadelphia County

by Harold Friedman, the defendant-appellant, after conviction of bribery and from the denial by the said court of motions in arrest of judgment and for a new trial.

Friedman was indicted for the statutory crime of bribery in an athletic contest as set forth in the Act of July 19, 1951, P.L. 1071, 18 PS §4614, which reads as follows: "Whoever gives or promises or offers, . . . to anyone who participates or expects to participate in any professional or amateur game . . . any bribe or money . . . with intent to influence him . . . to lose or cause to be lost any game . . . or to fix or throw any game . . . is guilty of a misdemeanor . . ."

Humberto Robinson, was a member of the Philadelphia National League Baseball Club, the Phillies, and was a pitcher for that club. He had been assigned to pitch the second game of a twilight doubleheader scheduled for Tuesday, September 22, 1959, between the Phillies and the Cincinnati Reds. On Monday evening, September 21, 1959, he was sitting in a booth in the Rittenhouse Hotel restaurant drinking beer with a man and two women, one of whom was Mrs. Dolores Drassel. Robinson testified that Friedman came to his booth and asked him to come to the lobby of the hotel; that he had known Friedman for some years; that they went to the lobby of the hotel where Friedman asked him if he was going to pitch the next day; that he said, "I want to put some money on the game", and offered him $1500; that he refused the offer, saying, "I don't want your money, I don't want to talk about it"; that he returned to the booth in the restaurant and told Mrs. Drassel what had happened and that he went to a booth in the rear of the restaurant and started to cry; that the following morning Friedman came to his hotel room in the Rittenhouse hotel and offered to give him $1500 if he would lose the game; that he again repeated that he did not want the money; that Fried-

man then placed an estimated two or three hundred dollars on the washstand; that he told Friedman to "Come and take it back, I don't want it"; that on the same evening he was the victim of a theft of his money concerning which he made a complaint to the police; that he went to the ball game and told his friend Reuben Gomez, also a pitcher on the Phillies club that Friedman had offered him money to lose the game; that he pitched and won the game; that he conferred with Edwin M. Sawyer, manager of the Phillies, Charles Meister, traveling secretary of the Phillies and Reuben Gomez; that on the following day he had a conference with John Quinn, General Manager of the Phillies.

Mrs. Drassel corroborated Robinson in that on the evening of September 21, 1959, she was sitting in the booth with Robinson in the Rittenhouse Hotel restaurant; that when she was visiting another booth she saw a man approach Robinson, talk to him and they left together; that on his return he told her that someone had asked him to throw a baseball game and he started to cry.

The appellant has evidently abandoned his motion in arrest of judgment and presses his argument for a new trial on the grounds that the court below erred in permitting Robinson to testify that he told his lady companion of the first alleged bribe offer and that he told Gomez much later, at the ball park; that the court further erred in permitting Robinson to testify about the conferences with the club officials; and that the court further erred in permitting these witnesses to be called when their testimony was excluded in toto.

The only testimony admitted into evidence as to what Robinson said in regard to the bribe offer, in addition to that of Robinson himself, was by Dolores Drassel, the woman who was one of his companions on the evening of September 21, 1959, when the appel-

lant made the first bribe offer. She testified that "immediately" upon the pitcher's return to the table, after he had left with Friedman for the lobby, Robinson "seems terribly upset", "started to weep and cry" and said that "someone had asked him to throw a ball game". In that factual context the testimony clearly falls within the res gestae exception to the hearsay rule. The Supreme Court defines a res gestae declaration as follows: "A res gestae declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the ocurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as a part of the res gestae. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself." *Allen v. Mack,* 345 Pa. 407, 410, 28 A. 2d 783 (1942). See also: *Com v. Stallone,* 281 Pa. 41, 126 A. 56 (1924).

The offer of a bribe is that kind of crime that takes place in the utmost secrecy and only between the offeror and the sport participant whom it was intended to bribe. The alleged statement of the defendant was the gist of the crime. The recent rash of bribery and attempted bribery that has swept the professional sports of baseball, football, basketball and boxing, as well as

amateur sports, including college football and basketball, has resulted in an intensified effort on the part of the legislature and law enforcement agencies to prevent and eradicate this crime. Because of the very nature of the crime itself, its secrecy and its attempt to corrupt the integrity of national sports that holds the interest and loyalty of so many of the general populance of this Commonwealth and of this country, the sincerity, the motive of the accuser becomes an integral part of the crime itself and relevant toward the establishment of the criminal intent of the accused.

It is somewhat comparable to the crime of rape where the sincerity of the accuser is tested by prompt outcry. It is deemed an important test of the sincerity of the woman in this crime against chastity that she make prompt complaint and if she conceals the injury for any considerable time after having the opportunity to complain, a strong inference may be justified against the truthfulness of her testimony. *Com. v. Mtynarczyk*, 34 Pa. Superior Ct. 256 (1907).

We believe, therefore, that in this statutory crime, the purpose of which is to protect the integrity of amateur and professional sports, the prompt complaints by the player to those to whom it would be reasonable for such complaints to be made, such as associates, his fellow players, his superiors, the authorities, become relevant to prove the sincerity, the motive, the state of mind of the complainant at the time the incident took place. This also goes to the proof of the Commonwealth's case of the criminal intent of the defendant and is relevant too to prevent a justified inference against the truth of his testimony. This is not hearsay, as he is relating only what is "within the sphere of his own memory brought to him by the couriers of his own senses". *Johnson v. Peoples Cab Company*, 386 Pa. 513, 126 A. 2d 720 (1956). What a person knows first hand from his own knowledge is not

hearsay. Sum. Pa. Jur., Evidence, §101; 14 P.L.E., Evidence, §131.

Baseball has always been considered our national sport and is followed avidly by the people of America from childhood up. The existence of "gambling" and "fixing" in relation to baseball was brought vividly to the attention of the people by the "Black Sox" scandal of 1919. This resulted in a public demand for reform so as to restore the integrity of the game that had been besmirched by the scandal. A baseball commissioner was named whose duty it was to administer the rules of baseball, police it and punish those connected with baseball for violation of its rules to insure its honesty and integrity. From this it follows that Robinson was under a duty to report the bribery incident.

It was held in *Hester v. Commonwealth*, 85 Pa. 139 (1878), cited with approval by *Com. v. Kay*, 14 Pa. Superior Ct. 376 (1900), that where a witness was an officer in a jail where the alleged declaration was made by the accused, the court allowed it to be introduced before the credibility of the witness was challenged on the ground that he was under a duty to have communicated the statement to his superiors. "His mere omission to do so would have discredited him when he went on the witness stand . . . afterwards to testify to them." *Com. v. Kay,* supra, at page 389.

Despite the fact that the defendant took the stand and denied vehemently that the alleged conversation ever took place or that he had ever offered Robinson a bribe, the cross-examination of Robinson, the motion in arrest of judgment, since abandoned, the record of the preliminary hearing, upon which he was cross-examined, as well as the record in general, all indicate an attempt to establish that even if such a conversation took place it was only a joke and the defendant had no criminal intent.

It should also be pointed out that although the appellant at the outset of the trial stated that he had no intention to attack Robinson's testimony, he then proceeded to do just that. Three police officers were introduced to testify that Robinson made no complaint to them about a bribe offer when he reported a larceny to them on September 21, 1959, which could have no conceivable purpose except to attack the Robinson bribe story and that his failure to so report the bribe to the authorities justifiably raised an inference against the truthfulness of Robinson's entire testimony. The Commonwealth was then in a position to rebut this attempt at discounting the evidence of Robinson by showing the prior consonant statements made to Dolores Drassel and the others.

The general rule is that a witness may not be corroborated or have his sworn testimony reinforced by proof that on previous occasions he made the same statements as those made in his testimony. Proof of such statements ordinarily would be unnecessary and valueless, "the witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial; and is rejected in all Courts." IV Wigmore on Evidence, §§1122-1129.

As President Judge Rice pointed out in *Com. v. Kay,* supra, the subject of the admissibility in evidence of prior consonant statements is most certainly not free from difficulty. And as was said by Mr. Justice Bell in a concurring opinion in *Risbon v. Cottom,* 387 Pa. 155, at page 167, 127 A. 2d 101 (1956), "A consonant statement should be admitted in rebuttal only to rebut a charge of recent fabrication and then only if made almost immediately after the ocurrence and before any reason or motive to fabricate existed, i.e., under circum-

stances which make it unlikely that the statement would be fabricated."

But most certainly, here, the testimony of the police could have no other purpose except to attack Robinson's credibility and the prior consonant statements became relevant to rebut the inference that the statements were of recent fabrication.

However, the court below refused to permit the Commonwealth to introduce the testimony of those to whom the complaint was alleged to have been made, with the exception of the testimony of Dolores Drassel which was permitted to be heard as part of the res gestae.

The order of proof is within the discretion of the trial court and if evidence, though incompetent when received, later becomes competent, its previous admission is not reversible error. *Com. v. Joyce,* 159 Pa. Superior Ct. 45, 51, 46 A. 2d 529 (1946). So that the exclusion of this testimony by the trial court was to the advantage of the appellant and indicates the fair conduct of this trial.

The appellant complains that the court below commmitted reversible error in permitting Sawyer, Gomez and Quinn to be called as witnesses although their testimony was rejected in toto. The Commonwealth calls our attention to the fact that this question was not raised in the court below and should not be considered here. *Com. v. Mays,* 182 Pa. Superior Ct. 130, 126 A. 2d 530 (1956). We so agree but would comment that the argument of the appellant that they were phantom witnesses called only because of their importance in the baseball world and served no purpose except to prejudice the defendant in this type of case, fails, in view of the extreme caution exercised by the court below in refusing to permit the introduction of their testimony.

Judgment of sentence affirmed.