EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FIDEL PACHECO ASENCIO, acusado y apelante.

*Número:* 16666. *Resuelto:* 20 de septiembre de 1961.

*Francisco Coll Moya y Santos P. Amadeo,* abogados del acusado-
apelante; *J. B. Fernández Badillo, Procurador General de
Puerto Rico y Carlos G. Látimer, Procurador General Auxi-
liar,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado Señor Hernández Matos,
como Presidente de Sala, y los Jueces Asociados Señores
Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del
Tribunal.

En 25 de enero de 1957 el Fiscal de Distrito de San Juan
formuló cuatro acusaciones contra el apelante Fidel Pacheco
Asencio imputándole la comisión de los delitos de asesinato en
primer grado, ataque para cometer asesinato y portación y
posesión ilegal de armas.

La prueba del ministerio público estableció que el día
24 de diciembre de 1956, Claudio González y Jesús Collazo
estuvieron en un establecimiento propiedad del acusado sito
en Trujillo Alto, y tras haber consumido varias copas de
licor, González se negó a satisfacer su importe y profirió
palabras obscenas e indecorosas en relación con el apelante,
retirándose del lugar. Algún tiempo después, encontrándose
Collazo en compañía de un amigo frente a la plaza de recreo
de dicha población, llegó el acusado y les invitó a subir a un
vehículo que conducía, a lo cual éstos accedieron. El acusado
se dirigió a la carretera que conduce al barrio Carraízo, y
después de increpar a Collazo por haber difamado a su es-
posa, detuvo la marcha, extrajo un revólver y le hizo varios
disparos que le causaron heridas en el pecho y en el muslo
izquierdo. El herido se dio a la fuga. El acusado regresó
al pueblo en donde se tropezó con González, quien caminaba
por una acera; le llamó y acto seguido le disparó en dos oca-
siones, causándole dos perforaciones en un pulmón que le
produjeron la muerte. En otras palabras, el balance trágico
de los actos del apelante en la Nochebuena de 1956 fue un
muerto y un herido de gravedad.

La prueba del acusado tendió a establecer defensa propia, y al efecto presentó el testimonio de testigos para demostrar que el occiso le había amenazado con un cuchillo en su establecimiento, y que luego, al encontrarse en el pueblo, había intentado agredirle.

Fue declarado culpable de todos los delitos que se le imputaron, y en apelación apunta la comisión de seis errores:

1. Ataca la suficiencia de la acusación por haberse omitido alegar que la muerte del interfecto ocurrió dentro de un año y un día después de haberse inferido las heridas que causaron la muerte. (Artículo 205 del Código Penal, 33 L.P.R.A. sec. 637.) En efecto la acusación no contiene una alegación específica sobre el particular, bien utilizando las palabras proverbiales del estatuto o en alguna otra forma.[1]

 El apelante admite que en *Pueblo* v. *Ortiz*, 64 D.P.R. 249 (1944) resolvimos que una acusación que imputaba al acusado que "allá en o para el día 24 de agosto de 1941 . . . dio muerte ilegal al ser humano . . . atacándola y agrediéndola con una piedra, produciéndole una contusión . . . a consecuencia de la cual falleció . . .", suficientemente alega que la muerte ocurrió dentro del año y un día de la alegada agresión. La acusación formulada por el fiscal en el presente caso, que aparece copiada al margen, sigue literalmente este texto, con excepción de la referencia a la forma en que se administró la causa de la muerte. Esto sería suficiente para disponer de este apuntamiento, si no fuera porque se nos pide que reexaminemos la doctrina expuesta a la luz de un planteamiento nuevo que no fue considerado anteriormente.

---

[1] La acusación presentada reza como sigue:

"El referido acusado Fidel Pacheco Asencio, allá en o para el día 24 de diciembre de 1956, y en Trujillo Alto que forma parte del Tribunal Superior de Puerto Rico, Sala de San Juan, en forma ilegal, voluntaria y criminalmente, con malicia premeditada, deliberación, con intención y propósito decidido y firme de matar, demostrando tener un corazón pervertido y maligno, dio muerte ilegal, al ser humano Claudio González Guadalupe, al cual acometió y agredió con un revólver, produciéndole heridas de balas de carácter grave, que le ocasionaron la muerte al referido Claudio González Guadalupe."

Arguye el acusado que de conformidad con la regla uniforme de hermenéutica de que cuando se adopta un estatuto vigente en otro estado se presume que el legislador igualmente adopta la interpretación que hasta la fecha de la adopción hubieren dado a sus disposiciones los tribunales de última instancia del estado de origen, *Pueblo* v. *Puente*, 14 D.P.R. 111 (1908) y *Pueblo* v. *Colón*, 15 D.P.R. 680 (1909), es obligatoria para este Tribunal la jurisprudencia interpretativa de California sobre la necesidad de incorporar una alegación específica en cuanto a la fecha de la ocurrencia de la muerte. Llama nuestra atención a las decisiones emitidas en *People* v. *Aro*, 6 C. 207 (1856); *People* v. *Kelly*, 6 C. 210 (1856); *People* v. *Cox*, 9 C. 32 (1858); *People* v. *Wallace*, 9 C. 30 (1858); *People* v. *Stevenson*, 9 C. 273 (1858) y *People* v. *Coleman*, 10 C. 334 (1858), en todas las cuales se indicó que era indispensable alegar la fecha de la muerte, de forma que el tribunal pueda determinar si ésta fue la consecuencia directa de la agresión. Esta era la regla del derecho común. Warren, *On Homicide*, (ed. 1938), vol. 2, sec. 177, págs. 77–78.

No asiste la razón al apelante. a) La centenaria regla que hemos reseñado ya había sido abandonada en el estado de California para 1872, o sea, con anterioridad a la aprobación del Código Penal de dicho año que fue el que nuestra Asamblea Legislativa tomó de modelo. En *People* v. *Murphy*, 39 C. 52 (1870) se objetó una acusación por el delito de asesinato,[2] fundándose, entre otros motivos, en la ausencia de la alegación sobre la fecha específica de la muerte. Al rechazar este reparo se dijo: "La suficiencia de la acusación no se determinará por las normas de derecho común . . . El requisito de que aparezca que la víctima falleció dentro de un año y un día, es una regla de evidencia únicamente. A menos que el interfecto haya muerto dentro de dicho tér-

---

[2] La acusación estaba concebida en parecidos o idénticos términos a la del presente caso.

mino no se permitirá al ministerio público probar que falleció a consecuencias de la herida recibida." Véase *People* v. *Clark*, 235 P.2d 56 (Cal. 1951) ; XV Tul. L. Rev., pág. 306; 12 So. Cal. L. Rev. pág. 19 (1938) ; cf. *Elliot* v. *Mills*, 335 P.2d. 1104 (1959). b) Aun cuando la regla imperante a la fecha de la aprobación de nuestro Código Penal fuera lo que se invoca por el apelante, no estaríamos constreñidos a seguirla, pues según expusimos en *Pueblo* v. *Matos*, 83 D.P.R. 335 (1961), citando a *Pueblo* v. *Ramos*, 18 D.P.R. 993, 1001 (1912), "la regla que exige que las cortes adopten la interpretación que se le ha dado a otro estatuto por la Corte Suprema [del estado] del cual ha podido ser tomado por la Legislatura, es una regla general y no es de aplicación universal sino que está sujeta a muchas excepciones y limitaciones". c) Finalmente, de la acusación según redactada aparece que la víctima falleció el mismo día de la agresión; y si ello no fuera suficiente, como se alega que la agresión ocurrió en 24 de diciembre de 1956 y la acusación se radicó treinta y dos días después, en 25 de enero de 1957, obviamente el requisito, de ser necesario, se hubiese cumplido.

2. Cuatro señalamientos se dirigen a impugnar instrucciones transmitidas por el tribunal de instancia al jurado. Las instrucciones impugnadas son las siguientes:

*a*—"Al usar intencionalmente un arma peligrosa y matar a una persona, la inferencia a deducir prima facie es que el acusado es culpable del delito de asesinato." (T.E., pág. 7.)

*b*—"En los casos de asesinato, como en otras causas criminales, el corpus delicti debe probarse como una condición esencial de culpabilidad. El hecho de la muerte y la causa que la produce son los únicos elementos que constituyen el corpus delicti. (T.E. pág. 9.)

*c*—"El delito de ataque con intención de cometer asesinato no es otra cosa que un delito de asesinato frustrado. Es decir, un asesinato que no se lleva a cabo porque no muere la persona objeto del ataque. Es decir, se trata de aquel caso en que el acusado ha puesto en práctica todos los elementos y todos los requisitos necesarios para que el delito se produzca y, sin em-

bargo, el delito no se ha producido por causas ajenas a su voluntad. La intención es elemento esencial del delito de ataque con intención de cometer asesinato, y para que exista tal delito es indispensable que la agresión se verifique con la intención premeditada de matar.

*d*—"Y, en tercer lugar, es necesario que la persona acusada no haya tenido ningún otro medio de eludir el ataque mas que dando muerte a su adversario. Esto es, que ningún otro medio razonable y probable de evitar esa muerte estaba a su alcance. Es de lugar instruiros, damas y caballeros del jurado, que una persona que es atacada por otra no está obligada a huir, esconderse o correr por las calles y caminos para ponerse a salvo de su agresor."

 Al terminar sus extensas instrucciones al jurado, la corte inquirió del fiscal y la defensa si tenían alguna instrucción que desearan llegara al conocimiento de los juzgadores de los hechos. Ambos contestaron en la negativa. Tampoco se levantó reparo alguno en ese momento a las transmitidas. (T.E. pág. 47.) Repetidamente hemos resuelto que cuando al terminar sus instrucciones al jurado, el tribunal solicita del abogado defensor, si interesa alguna instrucción especial y éste responde negativamente, y tampoco formula objeción alguna a las transmitidas, ni aun de carácter general, tal conducta constituye una renuncia a cualquier error que no lesione los derechos fundamentales del acusado. *Pueblo* v. *Negrón*, 79 D.P.R. 296, 302 (1956) ; *Pueblo* v. *Lampón*, 78 D.P.R. 109 (1955) ; *Pueblo* v. *Muñiz*, 73 D.P.R. 312 (1952; *Pueblo* v. *Feliciano*, 70 D.P.R. 875 (1950). Esto sería suficiente para terminar la discusión de los errores señalados. Sin embargo, los consideraremos en el orden enunciado aunque sea brevemente.

*a*—La instrucción objetada sobre la inferencia de la culpabilidad del delito de asesinato por el uso intencional de un arma peligrosa fue literalmente tomada del texto de la opinión emitida en 1926 en *Pueblo* v. *Carrión*, 35 D.P.R. 901, 903, (1926). Además, en *Pueblo* v. *Román*, 70 D.P.R. 50, 54 (1949) dijimos: "Los elementos de premeditación y deli-

beración, necesarios para una convicción de asesinato en primer grado, pueden deducirse de la manera en que se usa un arma mortífera, o quizás del mero uso de la misma, *Pueblo* v. *Alegría*, 36 D.P.R. 393 . . ." Sostiene el apelante que esta doctrina no es aplicable al presente por tratarse de un caso de defensa propia. Olvida, sin embargo, que el jurado no dió crédito a su versión de los hechos que tendió a establecer tal defensa, y que, de todas formas, el juez instruyó adecuadamente sobre el significado y alcance de esta defensa en cuanto a la responsabilidad del acusado. (Véanse, págs. 43 a 46 de las instrucciones.) En este sentido, las instrucciones deben apreciarse en conjunto y no aisladamente. Vinculadas razonablemente no pueden llevar a otra conclusión que la de que, independientemente de la inferencia que pueda sugerir el uso de un arma de fuego, la defensa propia, de ser creída la prueba al efecto, limpia de la responsabilidad penal.

*b*—Indica el acusado que la instrucción sobre el *corpus delicti* fue errónea, pues no se señaló al jurado que el Estado viene obligado a probarlo "más allá de toda duda razonable". No invoca autoridad alguna para esta afirmación. En las instrucciones, el juez de instancia claramente expuso que "la culpabilidad del acusado debe probarse fuera de toda duda razonable. Y cuando existe esa duda, debe absolvérsele." (T.E. pág. 41.) Inmediatamente se extendió en una explicación sobre lo que constituye duda razonable; y al finalizar (T.E. pág. 49) nuevamente se refirió a que en caso de duda razonable y fundada, procedía la exoneración. Obsérvese que en la instrucción sobre el corpus delicti, el tribunal expresó que éste debe probarse como "una condición esencial de culpabilidad", y luego, complementa la norma exponiendo que la culpabilidad debe probarse fuera de toda duda razonable. Ratificamos que las instrucciones deben ser consideradas como un conjunto de normas, y no aisladamente. *Pueblo* v. *Negrón*, 79 D.P.R. 296, 300 (1956); *Pueblo* v. *López*, 77 D.P.R. 607 (1954).

El estatuto específicamente dispone que "ninguna persona podrá ser convicta de asesinato u homicidio, a menos que la muerte de la persona que se alegare haber sido muerta, y el hecho de la muerte que se alegare haber sido causada por el acusado, resultaren probados como actos independientes; *aquélla por medio de pruebas directas* y éste de modo que no haya lugar a duda razonable." (Artículo 206 del Código Penal, 33 L.P.R.A. sec. 638.) Véanse, *Pueblo* v. *Busigó*, 78 D.P.R. 162 (1955); *Pueblo* v. *Rivera Escuté*, 66 D.P.R. 216 (1946); 3 Underhills's *Criminal Evidence* (ed. 1957), sec. 630, pág. 1494.

Consideradas todas las instrucciones, y no una frase entresacada de las mismas, no se cometió el error señalado.

*c*—Se queja el apelante de que la instrucción relacionada con el delito de ataque para cometer asesinato es fatalmente defectuosa ya que en la misma no se hace referencia a la necesidad de que exista una intención específica de matar, en contradistinción con la intención criminal que es elemento de la generalidad de los delitos. Una ligera lectura de las instrucciones demuestra que este error no fue cometido. El tribunal informó adecuadamente al jurado que "la intención es elemento esencial del delito de ataque con intención de cometer asesinato, y para que exista tal delito es indispensable que la agresión se verifique *con la intención premeditada de matar.*" *Pueblo* v. *Palou*, 80 D.P.R. 364, 388–390 (1958); *Pueblo* v. *Tribunal de Distrito* y *Colón, Interventor*, 74 D.P.R. 838, 855 (1953); *Pueblo* v. *Gómez*, 14 D.P.R. 127, 133 (1908).

*d*—La instrucción sobre defensa propia transcrita anteriormente se ajusta a derecho, y no creemos, como arguye el apelante, que el jurado haya podido captar la idea de que el acusado estaba necesariamente obligado a huir. El tribunal expuso primeramente la regla en términos generales—ausencia de otro medio para eludir el ataque o agresión de que ha sido objeto—y luego la calificó explicando en forma llana y sencilla que en tales circunstancias "no está obligado a huir,

esconderse o correr por las calles y caminos para ponerse a salvo de su agresor". *Pueblo* v. *Barrios*, 23 D.P.R. 831 (1916); cf. *Pueblo* v. *León*, 53 D.P.R. 429 (1938); *Pueblo* v. *Chico*, 45 D.P.R. 500 (1933).

3. Al terminar el interrogatorio de Gaspar Guadalupe Ayala, uno de los testigos de cargo, la defensa solicitó se le entregara la declaración jurada que éste había prestado durante la investigación preliminar, "para impugnarlo". El fiscal indicó que no tenía inconveniente en facilitarla, "pero una vez que sea usada, que esta declaración vaya al jurado". La defensa a su vez protestó de que el fiscal "no me puede obligar a admitir nada".

En el curso del contrainterrogatorio el abogado del acusado leyó varias partes de la declaración jurada prestada por el testigo al día siguiente de los hechos, con el propósito de establecer contradicciones entre lo allí expuesto y su deposición oral en el acto del juicio.[3] Al concluir la prueba oral, el fiscal ofreció en evidencia la declaración jurada escrita que el defensor había utilizado para impugnar al testigo. Después de discutirse la cuestión, y con objeción de la defensa, el tribunal la admitió,[4] y en su resolución dijo: " . . . esa declaración irá al conocimiento de ustedes solamente para el propósito de que ustedes la lean con relación a la declaración que dio aquí en Corte abierta, ante ustedes, el testigo que juró esa declaración. Y ustedes pueden determinar, a la luz de esa declaración, el alcance y calibre de la declaración que ha dado él aquí y el crédito que esa declaración que él ha dado aquí, les merezca a ustedes, a la luz de esa declaración. Si ustedes consideran que esa declaración constituye una com-

---

[3] Las supuestas inconsistencias se referían a los siguientes hechos: 1) si el testigo se había encontrado con el occiso el día de los hechos en la casa de unos amigos o en un negocio de un tal Juan Francisco; 2) si el testigo siguió a la víctima por iniciativa propia o por indicación de los amigos mencionados; 3) si el vehículo en que viajaba el acusado estaba detenido en la calle o caminaba lentamente y luego se detuvo; 4) si el interfecto acudió al llamado del acusado o lo desatendió.

[4] No hemos podido examinar la declaración. No se incluyó como parte de la transcripción de evidencia radicada en el recurso de apelación.

pleta o una parcial negación de lo que haya declarado aquí el testigo, ustedes le pueden dar el crédito que esa declaración merezca. Si ustedes creen que esa declaración que ha dado el testigo es reflejo de sus propias manifestaciones a la luz de los hechos que ocurrieron recientemente, la pueden comparar para darle el crédito que les merezca esa declaración que él dio, a la luz de esa declaración. También pueden ustedes tomar en consideración, como les instruirá la Corte en detalles que las contradicciones de la declaración que dió aquí hoy con la anterior, si no tienen el alcance de una contradicción esencial, ustedes pueden, aparte de eso, darle el crédito que quieran a la declaración del testigo. Por el contrario, si por el contrario creen que la declaración dada ahí tiene elementos de tal naturaleza sustanciales que desvirtúen la declaración, entonces deben tomar con sospecha y con cautela la declaración de ese testigo dada en Corte abierta." Luego ratificó que la admisión era a los únicos fines de determinal "el alcance y calibre de la credibilidad de la declaración dada aquí [en corte] por el testigo. Porque la defensa ha usado extensamente esa declaración y es bueno que el jurado *tenga el conjunto* para determinar si lo que dijo el testigo aquí le puede merecer crédito y qué grado de crédito le puede merecer." (T.E. págs. 184–185.)

No hay duda de que en el presente caso concurrían las circunstancias que hemos establecido para la entrega por el fiscal a la defensa de declaraciones juradas de testigos obtenidas durante la investigación preliminar, *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961); *Pueblo v. Aponte González*, 83 D.P.R. 511 (1961), y de que la defensa utilizó la mencionada declaración, cuando menos parcialmente, para impugnar el testimonio del testigo en el acto del juicio por haber hecho éste supuestamente manifestaciones anteriores inconsistentes.

La regla general es que el testimonio oral de un testigo prestado en el acto del juicio no puede ser corroborado mediante la presentación en evidencia de una declaración ju-

rada hecha por él en fecha anterior. Esta prueba es innecesaria y de escaso valor ya que si el testimonio es improbable o increíble la declaración anterior no le añade mayor crédito o respetabilidad. Impera tanto en causas criminales, *Commonwealth* v. *Freedman*, 165 A.2d 678, 682 (Pa. 1960); *Evans* v. *State*, 105 So.2d 831 (Ala. 1958); *Commonwealth* v. *Trignani*, 138 A.2d 215 (Pa. 1958); *Goldberg* v. *United States*, 213 F.2d 734 (C.A. 4, 1954); *Weaver* v. *State*, 31 So.2d 593 (Ala. 1947); 4 Wigmore, *On Evidence*, (3a. ed.) sec. 1126 y sigtes; como civiles, *Boutillette* v. *Robbins*, 154 N.E.2d 620 (Mass. 1958); *Biela* v. *Messner*, 151 N.E.2d 406 (Ill. 1958); *Thomas* v. *Ganeger*, 78 A.2d 539 (Conn. 1951). Varias excepciones se han reconocido a esta regla, y entre ellas, se permite la presentación de la declaración jurada anterior cuando, a) se ha impugnado la credibilidad del testigo mediante manifestaciones inconsistentes anteriores, *Burns* v. *Clayton*, 117 S.E.2d 300, 310 (S.C. 1960); *McElhattan* v. *St. Louis Public Service Company*, 309 S.W.2d 591 (Mo. 1958); *State* v. *Murley*, 212 P.2d 801 (Wash. 1950); *State* v. *Dawson*, 44 S.E.2d 527 (N.C. 1947); b) se ha tratado de establecer, expresa o implícitamente, que el testimonio prestado por el testigo en el juicio es de reciente preparación *(fabrication)* y responde a ulteriores motivaciones o a un interés especial en el resultado de la causa, *People* v. *Barnett*, 8 Cal. Reptr. 804 (1960); *People* v. *Green*, 4 Cal. Reptr. 304 (1960); *Van Gallon* v. *State*, 50 So.2d 882 (Fla. 1951); *State* v. *Sullivan*, 130 A.2d 610 (N.J. 1957); *Moore* v. *Leventhal*, 104 N.E.2d 892 (N.Y. 1952); *Cohen* v. *Covelli*, 94 N.Y.S.2d 782 (1950); c) se ha utilizado parcialmente la declaración jurada con el propósito de impugnar al testigo, en cuyo caso, es permisible presentar la declaración completa para que se puedan considerar las partes citadas dentro del conjunto de la declaración, *United States* v. *Lev*, 276 F.2d 605, 608 (CA 2, 1960); *Goldberg* v. *United States*, 213 F.2d. 734 (CA 4, 1954); cf. 7 Wigmore, *op. cit.*, 2113.

■ No hay duda de que en estas circunstancias en que por excepción se permite la presentación de las declaraciones anteriores, el único propósito para el cual son admisibles es rehabilitar al testigo en cuanto a su credibilidad o demostrar que su testimonio en el acto del juicio no es de "fabricación" reciente, ya que el testigo hizo idénticas manifestaciones en ocasión anterior, generalmente contemporáneas con la investigación inicial. Pero no son admisibles para establecer la veracidad de su contenido ya que obviamente constituyen prueba de referencia por no haber tenido la parte contraria la oportunidad de contrainterrogar. *People* v. *Green*, 4 Cal. *Reptr.*, 304 (1960); *State* v. *Sullivan*, 130 A.2d 610 (N.J. 1957); *Commonwealth* v. *Calderbank*, 55 A.2d 422, 424 (Pa. 1947). Aun así la admisión de la declaración anterior descansa en la sana discreción del juez, y para ejercicio de la misma debe considerarse, entre otros factores, el alcance y efecto probable de la impugnación del testigo. *Commonwealth* v. *Trignani*, 138 A.2d 215, 220 (Pa. 1958); *Beaty* v. *United States*, 203 F.2d 652, 656 (CA 4, 1953).

■ Consideradas todas las circunstancias concurrentes —lectura por el abogado defensor ante el jurado de preguntas y respuestas aisladas de la declaración jurada anterior con el propósito de establecer contradicciones—estimamos que en el ejercicio de su discreción el tribunal de instancia no erró al admitir, a petición del fiscal, la declaración íntegra. Además la corte instruyó al jurado en cuanto al propósito de la admisión de la misma. Finalmente, como el testimonio del testigo cuya declaración anterior escrita se admitió constituía evidencia acumulativa, y hay prueba independiente y abundante que sostiene el veredicto, el acusado no ha sido fatalmente perjudicado con la admisión de la declaración jurada del testigo Guadalupe. *Goldberg* v. *United States*, 213 F.2d 734, 737 (CA 4, 1954).

*No habiéndose cometido ninguno de los errores señalados, se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 6 de octubre de 1958.*