[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO STRIKE
The defendant Robert E. Pepe moves to strike counts 25 and 26 of the plaintiffs' second amended complaint, alleging negligence on the part of defendant Robert E. Pepe, and counts 27 and 28, alleging negligent entrustment on the part of defendant Robert E. Pepe. (Motion to Strike # 145).
The defendants North Italian Home Club, Inc. and Edward Evarto move to strike counts 13-24 of the plaintiffs' second amended complaint, alleging negligent service of alcohol to a minor, negligent supervision, and reckless and wanton conduct on the part of defendants North Italian Home Club, Inc. and Edward Evarto. (Motion to Strike # 156).
The plaintiffs in this action are Lise Morin, administratrix of the estate of Richard D. Morin, and William Rushlow. The defendants are Robert E. Pepe, the North Italian CT Page 8737 Home Club, Inc., Edward Evarto, Michael Cole, Sr., Michael Cole, Jr., and Keith E. Premo. The operative complaint, containing twenty-eight counts, dated April 10, 1992, alleges the following facts:
On the evening of April 13, 1990, Kenneth Keddy, John Snyder, David Mokoski, and defendant Robert E. Pepe, drove in Keddy's automobile to a "stag" party, being held at the defendant North Italian Home Club, Inc., in Meriden, Connecticut. Defendant Pepe, who was under the legal drinking age in Connecticut, volunteered to act as "designated driver" for the evening, promising not to consume alcohol and to drive Keddy, Mokoski, Snyder, and himself home in Keddy's automobile at the conclusion of the party.
While at defendant North Italian Home Club, Inc., Pepe was provided with alcoholic beverages by the defendants, Edward Evarto, Michael S. Cole, Sr, and Keith E. Premo, or their servants, agents and/or employees. Liquor was raffled off and consumed on the premises and the defendants served more than one drink at a time to Pepe, Keddy, Snyder, and Mokoski. Pepe consumed enough alcohol to become intoxicated, thus impairing his judgment and his ability to drive safely. The defendants demanded that Pepe and Keddy leave the premises at approximately 12:00 a.m. on April 14, 1990.
Upon leaving the party, Pepe drove Mokoski, Snyder, and himself in Keddy's automobile to Pepe's residence in Berlin, Connecticut. Pepe then exited the vehicle and entered his home, thus transferring control of Keddy's vehicle back to Keddy. Keddy then drove onto route 5/15, a public highway, and began heading southbound in the northbound passing lane. Plaintiff's decedent, Richard Morin, was driving in the proper direction in the northbound lane of that highway at approximately 1 a.m., when his vehicle and Keddy's collided. Richard Morin was killed in the accident, and plaintiff William Rushlow, a passenger in Morin's automobile, was injured.
Defendant Pepe filed Motion to Strike #145, with a supporting memorandum of law, on July 9, 1992. The plaintiffs filed a memorandum in opposition to defendant Pepe's motion on November 17, 1992. Defendants North Italian Home Club, Inc. and Edward Evarto filed Motion to Strike #156, with a supporting memorandum of law, on April 27, 1993. The CT Page 8738 plaintiffs filed a memorandum in opposition to that motion on June 29, 1993. The plaintiffs' second amended complaint, dated April 10, 1992, is the operative complaint and contains the counts addressed by Motion to Strike #145 and Motion to Strike #156.
The function of the motion to strike is to challenge the legal sufficiency of the allegations as set forth in the pleadings. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). It admits all well-pleaded facts and those facts necessarily implied from the allegations. D'Ulisse-Cupo v. Board of Directors of Notre-Dame High School, 202 Conn. 206,208, 520 A.2d 217 (1987). The motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Id. In addition, "the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff." Rowe v. Godou,209 Conn. 273, 278, 550 A.2d 1073 (1988). If facts provable under the allegations would support a cause of action, the motion must fail. Alarm Applications Co. v. Simsbury Volunteer Fire Department, 179 Conn. 541, 545, 427 A.2d 822 (1980).
Presently, there are two motions to strike before the court. Each of the motions to strike will be analyzed separately.
I. Motion to Strike
With Motion to Strike #145, dated July 2, 1992, defendant Pepe challenges the legal sufficiency of counts 25-28 of the plaintiffs' second amended complaint. In counts 25 and 26, plaintiffs allege negligence on the part of Pepe in that he breached a duty owed to the plaintiffs by failing to drive Keddy home safely and allowing Keddy to operate his own automobile. Plaintiffs further allege that Pepe knew or should have known that a failure to fulfill his duty as designated driver would result in a foreseeable risk of harm to the general public and the plaintiffs, and that this breach of duty caused the plaintiffs' damages.
Pepe moves to strike counts 25 and 26 on the ground that he owed no legal duty to the plaintiffs, and thus, no cause of action for negligence can be maintained. In opposition to Pepe's motion to strike counts 25 and 26, the plaintiffs argue that a duty was in fact owed to the plaintiffs by Pepe by CT Page 8739 virtue of his undertaking to be "designated driver" on April 13, 1990. The plaintiffs contend that this duty required Pepe to prohibit Keddy from operating his automobile because it was reasonably foreseeable to him that the harm which did in fact occur was likely to result from his actions.
In counts 27 and 28, plaintiffs allege negligent entrustment by defendant Pepe stemming from Pepe's transfer of control of Keddy's vehicle back to Keddy when Pepe knew or should have known that Keddy, due to his intoxication, was unable to safely operate the motor vehicle. Plaintiffs allege that Pepe's actions caused damages to them.
Pepe argues that counts 27 and 28 of the plaintiffs' second amended complaint should be stricken. Pepe concedes that Connecticut recognized the negligent entrustment cause of action in Greeley v. Cunningham, 116 Conn. 515, 165 A.2d 678
(1933). The thrust of his argument, however, is that there are no Connecticut cases which purport to place liability on a non-owner for negligent entrustment of a vehicle to its owner and that such a basis for negligent entrustment should not be recognized.
The plaintiffs counter that while Greeley v. Cunningham, supra, and the cases which have followed it, have dealt only with negligent entrustment by an owner, Connecticut case law has not precluded such an action against a non-owner. The plaintiffs argue that the doctrine of negligent entrustment encompasses the notion of placing liability on non-owners who have sufficient control over the instrumentality at the time of the entrustment and that, therefore, counts 27 and 28 should not be stricken.
A. Counts 25 and 26: Negligence
The existence of a duty is a question of law and may properly be tested by a motion to strike. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 171, 544 A.2d 1185 (1988). "Where there is no legal duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." (Citations omitted.) Neal v. Shiels, Inc., 166 Conn. 3, 12,347, A.2d 102 (1974). CT Page 8740
"A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). It has been stated that "`"[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?'" Orlo v. Connecticut, Co., 128 Conn. 231, 237,21 A.2d 402 [1941]." Neal v. Shiels, Inc., supra, quoting, Connecticut Savings Bank v. First National Bank Trust Co.,138 Conn. 298, 303-04, 84 A.2d 267 (1951).
The plaintiffs allege in counts 25 and 26 that Pepe volunteered to act as "designated driver" for the evening of April 13-14, 1990. The plaintiffs allege that by undertaking this responsibility, defendant Pepe encouraged Keddy to consume alcoholic beverages that evening and to become intoxicated. The plaintiffs assert that at the conclusion of the party, defendant Pepe drove himself home in Keddy's vehicle, and then refused to drive any further, when Pepe knew or reasonably should have known that Keddy was so intoxicated that he could not safely operate his automobile. The plaintiffs allege that Pepe's actions caused Keddy to resume control of his automobile, and to subsequently become involved in the collision that killed plaintiff's decedent, Richard Morin, and injured plaintiff William Rushlow.
Viewing the facts alleged in the light most favorable to the plaintiffs, a reasonable person in Pepe's circumstances would anticipate that agreeing to act as designated driver would encourage Keddy to become intoxicated. A reasonable person in Pepe's circumstances would anticipate that allowing Keddy, who was visibly intoxicated, to drive may lead to a fatal automobile accident. Accordingly, we conclude that the plaintiffs have pled sufficient facts establishing a legal relationship between the parties which gives rise to a duty of care owed to the plaintiffs. Accordingly, the Motion to Strike #145 with respect to counts 25 and 26 of the plaintiffs' second amended complaint is denied. CT Page 8741
B. Counts 27 and 28: Negligent Entrustment
Defendant Pepe contends that counts 27 and 28 of the plaintiffs' second amended complaint fail to state a legally sufficient cause of action because a non-owner cannot be held liable for negligent entrustment of a vehicle back to its owner.
The Restatement (Second) of Torts, 390, defines the tort of negligent entrustment:
 One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
Restatement (Second) of Torts, 390 (1965). See McKee v. Robinson, 1 Conn. L. Rptr. 68 (November 30, 1989, Austin, J.).
In Greeley v. Cunningham, 116 Conn. 515, 520,165 A.2d 678 (1933), the Connecticut Supreme Court adopted the Restatement (Second) approach in recognizing the doctrine of negligent entrustment:
 When the evidence proves that the owner of an automobile knows or ought reasonably to know that the one to whom he intrusts [sic] it is so incompetent to operate it upon the highways that the former ought reasonably to anticipate the likelihood of injury to others by reason of the incompetence, and such incompetence does result in such injury, a basis of recovery by the person is established.
Id. According to the Greeley case, the basis for recovery under the theory of negligent entrustment "rests primarily upon the negligence of the owner in intrusting [sic] the automobile to the incompetent driver," not the negligence of the entrustee. Id. "The principle features of the tort of CT Page 8742 negligent entrustment lie in the knowledge of the supplier concerning the dangerous propensities of the entrustee and in the foreseeability of harm." McKee v. Robinson, supra.
In his memorandum in support of the motion to strike, Pepe correctly states that there are no Connecticut cases which have placed liability for negligent entrustment upon a non-owner. Pepe also asserts that the doctrine of negligent entrustment in Connecticut is based upon the ownership status of the defendant. Pepe has not, however, presented any authority, nor has any been found, within this jurisdiction which states that the non-owner status of the defendant automatically precludes liability for negligent entrustment.
Conversely, Greeley v. Cunningham, supra, and subsequent negligent entrustment cases lend support to the proposition that recovery against a non-owner has not been precluded in Connecticut. Liability for negligent entrustment is not based on a defendant's ownership status, but instead, the dispositive issue in the present case is whether a designated driver, by virtue of this status, has sufficient control over the vehicle of the owner to give rise to an action for negligent entrustment.
Comment b following 390 of the Restatement (Second) of Torts states that 390 is a special application of Restatement (Second) of Torts, 308, which provides that:
 It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.
(Emphasis added.) Restatement (Second) of Torts, 308 (1965).
In defining "control," the comments to 308 state
 [t]he words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the CT Page 8743 actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.
Comment a, Restatement (Second) of Torts, 308 (1965). Viewing the facts alleged in the light most favorable to the plaintiffs in assuming the role of designated driver, Pepe attained sufficient control over Keddy's vehicle so as to subject himself to liability for negligent entrustment.
Note that in Hughes v. Titterton, 2 CSCR 845 (July 13, 1987, Wagner, J.), the court cited with approval Restatement (Second) of Torts, 390, which makes no reference to any requirement that the defendant in a negligent entrustment action be the owner of the instrumentality entrusted. Id.
Similarly, in McKee v. Robinson, supra, the court stated: "Liability can arise when any person . . . who has a vehicle under his control permits another to use the vehicle if he knows or should know that the other is unable to manage the vehicle and therefore injury to others is likely to result." (Emphasis added.) Id. In McKee, the plaintiff sued the owner of a vehicle for the negligent entrustment of the vehicle to her by the son of the owner-defendant. Id. The McKee case differs from the present case because the defendant father was sued for negligent entrustment through agency principles; however, McKee implies that liability for negligent entrustment can arise when any person who has control over a vehicle allows another to use the vehicle if he knows or reasonably should have known that the entrustee, for whatever reason, is unable to operate the vehicle safely and that injuries to others are thus likely.
Non-owner negligent entrustment was found in Lombardo v. Hoag, 237 N.J. Super. 87, 566 A.2d 1185 (1989). In that case, the defendant, like Pepe, delivered the vehicle he had been driving back to its intoxicated owner. Almost immediately, the owner was involved in a collision. The defendant was sued on a theory of negligent entrustment. The defendant claimed that the concept of negligent entrustment was "inapplicable to a situation where a chattel is entrusted to its rightful owner." Id., 1186. The New Jersey Superior Court held that, while the facts did not indicate that the defendant was legally in control of the vehicle at the time he turned it over to the CT Page 8744 owner, "[t]he bottom line is that if [the] defendant knew or should have known that [the owner] was intoxicated and unable to drive, then he should have done whatever a reasonable person would have done under the circumstances to see that [the owner] did not drive his vehicle." Id., 1190.
In Bahm v. Dormanen, 543 P.2d 379 (Mont. 1975), the defendant and another borrowed a truck from its owner. Id., 381. The defendant drove the truck for some time before turning the vehicle over to his companion, who was intoxicated, and was subsequently involved in an accident. Id. In Bahm, the court noted that "[s]pecifically the theory of negligent entrustment provides that the owner or one in control of the vehicle and responsible for its use who is negligent in entrusting it to another can be held liable for such negligent entrustment." Id., 381. The court went on to hold that the defendant's mere physical control over the vehicle was an insufficient level of control to render him liable for negligent entrustment. Id., 382.
The present case is distinguishable from the Bahm case in that Pepe did not simply borrow Keddy's vehicle, but assumed the responsibility of designated driver of that vehicle.
The plaintiffs have alleged facts sufficient to establish that defendant Pepe, in assuming the role of designated driver, exercised sufficient control over Keddy's vehicle to subject himself to suit for negligent entrustment. Accordingly, the Motion to Strike #145 with respect to counts 27 and 28 of the plaintiffs' second amended complaint is denied.
II. Motion to Strike #156
With Motion to Strike #156, dated April 23, 1993, defendants North Italian Home Club, Inc. and its permittee, Edward Evarto, challenge the legal sufficiency of counts 13-24 of the plaintiffs' second amended complaint.
In counts 13 and 14, as to the North Italian Home Club, Inc., and counts 19 and 20, as to Evarto, plaintiffs allege negligent service of alcohol to a minor in that the defendants, their agents, servants, and/or employees, caused the plaintiffs' damages by serving alcohol to a minor in violation of General Statutes 30-86 when they knew or should CT Page 8745 have known that such action would cause Pepe to become so impaired that he would be unable to fulfill his responsibility as designated driver, thus causing an unreasonable risk of harm to the plaintiffs; offering and delivering more than one drink at a time to Pepe in violation of Conn. Dept. Reg.30-6-A24b(b)(1); allowing liquor that was raffled off on the premises to be consumed on the premises; demanding that Keddy and Pepe leave the premises; failing to ascertain whether Pepe was intoxicated; and, failing to provide alternate means of transportation or to allow Keddy and Pepe to remain on the premises in order to reach a level of sobriety.
In counts 15 and 16, as to the North Italian Home Club, Inc., and counts 21 and 22, as to Evarto, plaintiffs allege negligent supervision which caused the plaintiffs' damages, in that the defendants failed to supervise and/or take adequate precautions to assure that Pepe, who was not of legal drinking age, was not sold, delivered, and/or served alcoholic beverages in violation of General Statutes 30-86
or Conn. Dept. Reg. 30-6-A24b(b)(1); failed to take adequate precautions to prevent intoxicated individuals from driving; failed to provide adequate adult or police supervision for the party; failed to notify the Pepe's parents of his intoxicated state; demanded that Pepe, who they knew or reasonably should have known was intoxicated and unable to safely operate a motor vehicle, leave the premises; failed to allow Pepe or Keddy to remain on the premises in order to become sober; failed to provide alternate means of transportation to the occupant's of Keddy's car; failed to properly supervise the raffle of liquor and to assure that it was not consumed on the premises; and failed to ascertain whether Pepe was intoxicated and/or impaired prior to leaving the premises.
Defendants North Italian Home Club, Inc. and Evarto argue that counts 13-16 and 19-22, which allege negligent service of alcohol to a minor and negligent supervision, must be stricken because an intervening act by a third party was the sole proximate cause of the plaintiffs' alleged damages. More specifically, the defendants argue that Pepe's transfer of control of Keddy's automobile back to Keddy constituted an intervening act which broke the chain of proximate causation which was set in motion by their actions.
The plaintiffs counter that, pursuant to Ely v. Murphy,207 Conn. 88, 540 A.2d 54 (1988), a cause of action exists in CT Page 8746 negligence where a minor is served alcohol and injury results. The plaintiffs further claim that it was reasonably foreseeable to the defendants that their service of alcohol and failure to adequately supervise the premises would cause Pepe, as designated driver, to consume alcohol, suffer impaired judgment, and allow Keddy to drive his automobile while intoxicated.
Defendants North Italian Home Club, Inc. and Evarto also move to strike counts 17, 18, 23, and 24 of the plaintiffs' second amended complaint. These counts allege wanton and reckless conduct on the part of the North Italian Home Club, Inc. and Evarto in that they, their agents, servants, and/or employees: sold or delivered alcoholic beverages to a minor in violation of General Statutes 30-86; sold or delivered alcoholic beverages to an intoxicated person in violation of General Statutes 30-86; sold, delivered and/or furnished to Pepe such a quantity of alcohol that they "knew or recklessly disregarded" circumstances which indicated that Pepe was intoxicated and that he would neglect, fail, or refuse to carry out the duties of designated driver; delivered more than one drink at a time to Pepe and Keddy in violation of Conn. Dept. Reg. 30-6-A24b(b)(1); failed to allow Pepe or Keddy to remain on the premises in order to become sober; failed to provide a safe alternate means of transportation to the occupants of Keddy's car; demanded that Keddy and Pepe leave the premises when they knew or recklessly disregarded circumstances indicating that such action would lead to the operation of an automobile by an intoxicated individual; sold and/or distributed liquor through a raffle, failed to instruct those present not to consume said liquor, and failed to prevent such consumption; served more than one alcoholic beverage at a time to Keddy and others when they knew or recklessly disregarded circumstances which would indicate that said beverages would be consumed by Pepe; failed to prevent Pepe from driving while intoxicated; and sold or delivered alcohol to Pepe in reckless disregard of facts indicating "the creation of foreseeable and/or unreasonable risk of harm to the general public including plaintiff Rushlow and plaintiff's decedent Morin."
Defendants North Italian Home Club, Inc. and Evarto argue that the plaintiffs have failed to set out any facts in these counts that demonstrate that the defendants knew or should have known of Pepe's or Keddy's state of intoxication, or that CT Page 8747 the defendants knew or recklessly disregarded the intoxicated state of Pepe or Keddy when they demanded that the two men leave the premises. The defendants argue that "[t]he mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton conduct"; Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39, 46,492 A.2d 219 (1985); and that without specific allegations supporting the claim of reckless and wanton conduct, such counts must be stricken.
The plaintiffs counter that the allegations of their second amended complaint, when taken as true, set forth with sufficient specificity acts committed by the defendants which are tantamount to reckless and wanton conduct and that thus, the motion to strike should be denied. The plaintiffs argue that the "essential allegation" of the second amended complaint is that the defendants provided alcohol to a minor who the defendants knew to be a designated driver, and that whether this conduct was "reckless" is a question of fact for the trier of fact that should not be decided on a motion to strike. In addition, the plaintiffs argue that recklessness is determined by the state of mind of the defendants and they cannot be expected to plead facts with precision that hinge on the defendants' state of mind.
A. Counts 13-16 and 19-22: Negligent Service of Alcohol to a Minor and Negligent Supervision
The cause of action for negligent supervision and negligent service of alcohol "in a variety of factual settings has uniformly failed [because] the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary consumption of the beverage brings about intoxication and subsequent injury." Ely v. Murphy, supra, 92; see Nolan v. Morelli, 154 Conn. 432,436, 226 A.2d 383 (1967). Where the actor is a minor, however, there is "a continuing and growing public awareness and concern that children as a class are simply incompetent by reason of their youth and experience to deal responsibly with the effects of alcohol." Ely v. Murphy, supra, 94. It follows that a minor's "consumption of alcohol does not, as a matter of law, constitute the intervening act necessary to break the chain of proximate cause and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury." Ely v. Murphy, supra, 95. CT Page 8748
Note that "[t]his is not to say . . . that the . . . purveyor of alcohol is absolutely liable to the minor served or innocent third parties thereafter injured. Rather, the matter of proximate cause of the injury and ensuing damage becomes one of fact to be determined in each instance by the court or jury . . ." Id., 97.
The defendants argue that the plaintiffs' claims of negligent service of alcohol to a minor and negligent supervision must be stricken because their acts did not proximately cause the plaintiffs' injuries.
Proximate cause exists where there is "a sequence of events unbroken by a superseding cause . . ." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 383, 441 A.2d 620 (1982). The function of the doctrine of superseding cause "is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force." D'Arcy v. Shugrue, 5 Conn. App. 12, 24, 496 A.2d 967 (1985).
"The test for finding proximate cause `is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.'" Coburn v. Lenox Homes, Inc., supra, 384, quoting Mehri v. Becker, 164 Conn. 516, 522, 325 A.2d 270 (1973). "The foreseeable risk may include the acts of the plaintiff and of third parties." (Citation omitted.) Coburn v. Lenox Homes, Inc., supra, 384.
The plaintiffs assert, in part, that the defendants provided alcohol to a minor who they knew to be a "designated driver." Taking the plaintiffs, allegations as true, it would have been reasonably foreseeable to the defendants that such actions would have caused defendant Pepe to become intoxicated, suffer from impaired judgment, and thus fail to carry out his duties as designated driver and allow Keddy to drive; in short, that the "`harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.'" Coburn v. Lenox Homes, Inc., supra, 384, quoting Mehri v. Becker, supra. Accordingly, viewing the facts alleged in the light most favorable to the plaintiffs, the plaintiffs have set forth facts sufficient to establish CT Page 8749 that the defendants proximately caused the plaintiffs' injuries and that the acts of defendant Pepe did not serve to supersede the defendants' liability.
B. Counts 17, 18, 23 and 24: Reckless and Wanton
Motion to Strike #156 also challenges the legal sufficiency of counts 17 and 18, as to the North Italian Home Club, Inc., and counts 23 and 24, as to Evarto, which allege reckless and wanton conduct on the part of said defendants.
As noted above, the general rule in this jurisdiction is that there is no common law negligence cause of action against an individual who furnishes alcohol to a person who voluntarily becomes intoxicated and causes damages to himself or another. Nolan v. Morelli, 154 Conn. 432, 436, 226 A.2d 383
(1967). The reason for this rule is that the "proximate cause of the intoxication was not the furnishing of the liquor but the consumption of it by the purchaser or donee." Kowal v. Hofher, 181 Conn. 355, 358, 436 A.2d 1 (1980). It was also noted above that in Ely v. Murphy, supra, an exception to this rule was carved out to hold those who provide alcohol to minors liable for harm proximately caused by such service. In Kowal v. Hofher, supra, another exception to the general rule was established. In that case it was held that "one ought to be required, as a matter of policy, to bear greater responsibility for consequences resulting from his act when his conduct is reckless or wanton than when his conduct is merely negligent." Id., 361. The issue presently before that court is whether the plaintiffs have set forth facts sufficient to establish that the defendants' conduct was reckless and/or wanton.
"A cause of action claiming wanton and reckless misconduct is `separate and distinct' from a cause of action alleging negligence." Belanger v. Village Pub I, Inc.,26 Conn. App. 509, 513, 603 A.2d 1173 (1992), quoting Kostiuk v. Queally, 159 Conn. 91, 94, 267 A.2d 452 (1970).
 There is a wide difference between negligence and reckless and wanton misconduct. "`Recklessness is a state of consciousness with reference to consequences of one's acts. It "requires a conscious choice of a course of action either with knowledge of the serious CT Page 8750 danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man," and the actor "must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent." It is "more than negligence, more than gross negligence."'"
(Citations omitted.) Sheiman v. Lafayette Bank Trust Co.,4 Conn. App. 39, 45, 492 A.2d 219 (1985); see Santiago v. Drolet, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 514312 (May 26, 1993, Hennessey, J.).
"Willful," "wanton," or "reckless" conduct has been defined as that which "tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Dubay v. Irish,207 Conn. 518, 533, 542 A.2d 711 (1988).
"The mere use of the words `reckless' and `wanton' [by the plaintiffs will be] insufficient to raise an actionable claim of reckless and wanton misconduct." Sheiman v. Lafayette Bank Trust Co., supra, 46. "A claim for wanton and reckless conduct, which is unsupported by sufficient alleged facts to support it, is a mere conclusion of law and is subject to a motion to strike." Muckle v. Francis, 7 CTLR 230, 231 (September 14, 1992, Leuba, J.); see Sheiman v. Lafayette Bank Trust Co., supra. To survive a motion to strike, the plaintiffs "must plead-actual facts which indicate the defendant[s] knowingly served an intoxicated person, not just conclusions." Muckle v. Francis, supra, 231.
In the present action, the plaintiffs have alleged that the defendants provided alcoholic beverages to a minor and already intoxicated persons; provided alcohol to Pepe and "knew or recklessly disregarded, circumstances which indicated that Pepe was intoxicated and that he would thus fail to carry out his duties as designated driver; delivered more than one drink at a time to Pepe and Keddy when they knew or recklessly disregarded circumstances which would indicate that said beverages would be consumed by Pepe; failed to allow Pepe or Keddy to remain on the premises in order to become sober; CT Page 8751 failed to provide a safe alternate means of transportation to the occupants of Keddy's car; demanded that the group leave the premises when they knew or recklessly disregarded circumstances indicating that such action would lead to the operation of an automobile by an intoxicated individual; and, failed to prevent Pepe from driving while intoxicated.
While the factual bases of the plaintiffs' claims of reckless and wanton conduct are similar to that of the plaintiffs' negligence claims, these counts sufficiently allege that the defendants' actions were carried out with reckless disregard of or indifference to the rights and safety of others. We conclude that the plaintiffs have alleged in counts 17, 18, 23, and 24 facts sufficient to establish reckless and wanton conduct by the defendants. Accordingly, the Motion to Strike #156 with respect to those counts is denied.
Mary R. Hennessey, Judge