EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO PELLICIER MARCHANY, acusado y apelante.

Núm. 8140.—*Sometido:* Mayo 2, 1940. *Resuelto:* Mayo 28, 1940.

*Enrique Báez García,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Francisco Pellicier Marchany fué convicto de homicidio voluntario a virtud de una acusación en que se le imputaba el delito de asesinato.

■ El primer señalamiento es que la corte de distrito cometió error al permitir al fiscal que le preguntara a un médico, que había descrito cierta herida, si el interfecto podía o no coger algún objeto. La única autoridad citada por el apelante a este respecto es 11 R.C.L. 564, párrafo 3. De la transcripción taquigráfica tomamos el siguiente extracto:

"Fiscal (P.)—¿Con qué heridas que tenía el interfecto intervino usted como médico-cirujano?

"R. Este señor tenía seis heridas.

"P. La primera, ¿cómo era?

"R. Tenía una en el aspecto bolar del antebrazo.

"P. ¿En qué mano?

"R. Del antebrazo, de la muñeca y la mano izquierda.

"P. Explíquele al jurado cómo era esa herida.

"R. Quiere decir en la parte anterior de la mano y de la muñeca, del antebrazo.

"P. ¿De qué extensión era esa herida?

"R. Una herida larga y profunda, al extremo que le cortó la piel, tendones, vasos, huesos y pasó al otro lado.

"P. Con esa herida que le había pasado la mano al otro lado, ¿podía el interfecto coger algún objeto?

"R. Lic. Báez García: Me opongo a la pregunta.

"Hon. Fiscal: Él es el perito, Sr. Juez.

"Lic. Báez García: Pero se le pide una opinión al perito.

"Hon. Juez: Él es perito, si examinó la herida puede decir qué resultado produjo esa herida. Además, la defensa aceptó la capacidad del perito.

"Lic. Báez García: Nosotros hemos aceptado al perito para que declare sobre la naturaleza de las heridas, pero no para que conteste preguntas hipotéticas de si podía o no podía coger una cosa con esa mano.

"Hon. Juez: La corte sostiene la pregunta porque entiende que el perito examinando la herida puede decir el estado en que quedó la mano, el brazo y el antebrazo.

"Lic. Báez García: Tomamos excepción por el fundamento de que el perito puede declarar solamente sobre la naturaleza de las heridas y no sobre las condiciones de esa mano.

"Hon. Juez: (Al testigo) Conteste la pregunta.

"R. Después de la herida, no, señor, no podía hacer uso de ella.

"Lic. Báez García: Pedimos a la corte que excluya la contestación del testigo por los mismos fundamentos de la oposición.

"Hon. Juez: Sin lugar.

"Lic. Báez García: Tomamos excepción por los mismos fundamentos."

No hallamos que se cometiera error en esto. Véanse Abbott, Criminal Trial Practice, 981, sección 529; 2 Warren on Homicide 670, sección 216, y Underhill's Criminal Evidence, 454, sección 241. Sea ello como fuere—dados los hechos y circunstancias del presente caso—el error, de haberlo, no fué perjudicial.

■■ El segundo señalamiento es que la corte de distrito erró al declarar sin lugar la petición del acusado para que se permitiera a un testigo describir gráficamente ante el jurado la posición del acusado, el testigo, el camino y las diferentes casas durante el momento de los hechos.

El alcance y modo de conducir la repregunta es cuestión que cae en gran parte dentro de la discreción del juez sentenciador. Un acusado, desde luego, tiene derecho a impugnar la credibilidad de un testigo de cargo y su derecho debe ser respetado. No puede restringirse en tal forma que se le impida descubrir la verdad. Tomando todo en consideración, no hallamos que en el presente caso hubiera tal abuso de discreción que exija se revoque la sentencia. El acusado, en el examen directo, declaró que había conocido a Manuel Ruiz por espacio de seis u ocho años y que durante los últimos seis meses Ruiz había vivido en la misma casa en que residían el acusado y su esposa. De la declaración del acusado en el examen de repregunta tomamos lo siguiente:

"R. Ese disgusto había sido porque una noche cuando las fiestas de la Monserrate en Hormigueros...

"Lic. Báez García: Yo me opongo a eso, porque eso es demasiado remoto.

"Hon. Juez: Sí, señor.

"Hon. Fiscal: Sí, está bien."

Fuera de esto, nada hay que demuestre dónde Ruiz tomaba sus comidas.

█ El juez de distrito, en el curso de sus instrucciones al jurado, dijo:

"El caso presente realmente es un caso raro porque en este caso se imputa a este acusado el delito más grave que se puede cometer en nuestro país definido en nuestros estatutos penales como el delito más grave, el delito mayor. Aquí se da el caso de que El Pueblo de Puerto Rico ha presentado un testigo presencial de los hechos y el acusado no ha traído ni un solo testigo en su defensa, excepto su propia declaración, sobre la cual instruiré a los señores del jurado más adelante. De modo que por las circunstancias especiales de este caso los señores del jurado deben consagrarle todo su interés y estudiar la evidencia que se les ha sometido con todo cuidado y hacer un análisis completo de las dos teorías.

"Si el acusado no hubiera declarado, entiende la corte que es un deber instruir a vosotros que nadie hubiera podido conocer el motivo de esta tragedia. El motivo realmente no es necesario que El Pueblo de Puerto Rico lo pruebe, pero siempre al discutir los señores del jurado les satisface saber el porqué de las cosas que ocurren en nuestra sociedad. No es una obligación decir por qué fulano mató a zutano, pero siempre es una satisfacción espiritual del juzgador saber el motivo por el cual fulano le infirió tal daño a zutano o a zutanejo. En este caso después que el acusado ha declarado los señores del jurado ya tienen el motivo, si no en todo en parte. Estas dos personas, estas tres personas, porque la esposa también está acusada, estas tres personas vivían juntas y hay que suponer que las personas que viven juntas, comiendo el pan y la sal, se deben querer y debe haber una familiaridad entre ellos, porque no se concibe que tres personas que viven bajo el mismo techo, comiendo el pan y la sal juntas, y yo creo que los señores del jurado sabrán que hay un proverbio árabe que determina que las personas que han comido el pan y la sal juntas no se odian nunca. Esas personas que comen y duermen juntas debe haber un algo entre ellas y realmente, salir así el esposo, el acusado, asesinando con premeditación, alevosía, ensaña-

miento, malicia expresa y tácita al compañero, al vecino que duerme con él en la misma casa, hubiera sido una gran tortura mental para los juzgadores determinar los motivos de esta tragedia, como si el acusado hubiera actuado en absoluta penumbra. Pero el acusado ha declarado y el acusado se ha encargado de aclarar el motivo de esta tragedia, y el motivo es, que Manuel Ruiz vivía junto, en la misma casa del acusado, vino tarde, y el fiscal supone también que ha podido venir bajo la acción de unos *palos,* que era molesta su llegada a esas horas tardes en la noche, y que para los hombres de trabajo, los hombres del campo, les es una molestia perder su sueño, teniendo muchas veces que madrugar, el tener que levantarse para luego perder una hora u hora y media para luego conciliar el sueño. Había entre ellos algunas desavenencias que comenzaron la noche anterior; que el dueño de la casa le había cortado los hilos de la hamaca, diciéndole, podría decirse, que se largara de aquella casa en que había convivido con él.''

Se señala esto como error.

Si se hubiera convicto al acusado del delito de asesinato, la cuestión que aquí se presenta tal vez hubiera requerido la revocación de la sentencia. Toda vez que el acusado fué sentenciado por el delito de homicidio y, en su consecuencia, absuelto de asesinato, no estamos en condiciones de decir que el jurado fuera inducido a error o influído indebidamente por esa instrucción.

La contención final del apelante es que el juez de distrito erró al dejar de instruir al jurado sobre el valor de las manifestaciones exculpatorias contenidas en la declaración prestada por el acusado en el acto del juicio. A este respecto el apelante se funda en el caso de *El Pueblo* v. *Sánchez,* 55 D.P.R. 351, 369. En ausencia de una solicitud para que se diera una instrucción especial, no encontramos que se cometiera error que dé lugar a la revocación.

*La sentencia apelada debe ser confirmada.*