EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO LÓPEZ MUÑIZ, acusado y apelante.

Núms. 14112, 14283 y 14284.—*Sometidos:* Marzo 6, 1950.
*Resueltos:* Marzo 13, 1950.

2

*Eudaldo Báez García,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr., Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Por haber dado muerte a Monserrate Rivera con malicia y premeditación, Pedro López Muñiz y Otilio Marrero fueron acusados por el fiscal del distrito de Mayagüez del delito de asesinato en primr grado.[1]   Celebrado el juicio conjuntamente, el jurado rindió veredicto declarando al primero culpable de asesinato en segundo grado y absolviendo al segundo.

---

[1] También fueron acusados de portar armas y de infracción a la Ley sobre Registro de Armas y estos casos fueron sometidos por la misma prueba del delito grave.

López Muñiz fué sentenciado a sufrir de 10 a 12 años de presidio con trabajos forzados y de la sentencia así dictada, apeló. En su alegato imputa a la corte inferior los cuatro errores que pasamos a discutir en seguida.

██ Sostiene en primer lugar que la corte inferior erró al permitir que el Dr. José Enrique Arrarás, cuyo nombre no aparecía al dorso de la acusación, declarara como testigo de El Pueblo. El permitir que declare un testigo cuyo nombre no figura al dorso de la acusación es cuestión que descansa enteramente dentro de la sana discreción de la corte sentenciadora y con tal discreción no intervendremos a no ser que se nos demuestre que ha habido un abuso de ella. *Pueblo* v. *Garay*, 67 D.P.R. 869 y casos citados a la página 873. En el presente caso no se nos ha demostrado que se cometiera semejante abuso, especialmente si tomamos en consideración que el informe pericial de este médico constaba en autos con antelación a la fecha del juicio y que con tal motivo el acusado debió presumir que el testimonio de éste podía ser utilizado por El Pueblo.

██ Alega en segundo lugar el apelante que fué un error de la corte de distrito no permitirle repreguntar a Cielo Sosa Padilla, testigo de El Pueblo, sobre la reputación de la casa donde ella vivía. Cuando surgió este incidente ya la testigo había declarado extensamente y manifestado que para la época en que ocurrieron los hechos ella era una mujer de mal vivir. Además, que hacía algún tiempo que vivía honradamente. La defensa en su repregunta trató de que ella declarara respecto a la reputación de la casa donde vivía al momento en que se celebraba el juicio. A ello se opuso el fiscal y la corte sostuvo su objeción. En apoyo de este error sostiene el apelante que el objeto de la repregunta fué llevar al ánimo de los señores del jurado que la declarante Cielo Sosa Padilla era aún para la época en que se celebraba el juicio mujer de mala reputación y que por ende su testimonio no merecía crédito alguno.

El alcance y modo de conducir la repregunta es también cuestión que cae dentro de la discreción del juez sentenciador y su actuación no será alterada por nosotros a no ser que se haya abusado de ella. *Pueblo* v. *Pellicier*, 56 D.P.R. 882; *Pueblo* v. *Santiago*, 16 D.P.R. 469. Asumiendo, no obstante, a los fines de esta opinión, que fuera un error de la corte a quo no permitir tal repregunta, nos hallaríamos siempre con el hecho de que los testigos Diego de Jesús Nieves, René Camacho Caballery y Rosa Elba Ramírez ya habían hecho una versión de lo ocurrido que era similar en sus detalles a la expuesta por la testigo Cielo Sosa Padilla y que al dar crédito a las declaraciones de esos testigos, mas no así al testimonio de la Sosa Padilla, el jurado pudo siempre llegar a la conclusión que llegó. Así pues, el no haber permitido la repregunta en cuestión no puede en forma alguna constituir un error que da lugar a la revocación.

■■ Terminada la prueba de la defensa, el fiscal manifestó que iba a ofrecer como prueba de *rebuttal* la declaración prestada ante él por el acusado López Muñiz. Se opuso a ello el letrado del apelante, pero luego de retirarse el jurado, y de examinarse extensamente al taquígrafo del fiscal respecto a la forma en que la declaración fué hecha, la corte llegó a la conclusión de que la misma había sido voluntaria y la admitió en evidencia. La resolución a ese efecto es objeto del tercer error señalado por el apelante. Insiste en que al admitirse tal declaración en evidencia a él se le privó del derecho a repreguntar al declarante, ya que no podía "repreguntar a un pedazo de papel", así como de la oportunidad de poder presentar prueba para demostrar que la confesión no fué un acto voluntario de su parte y de demostrar que el taquígrafo, por carecer de capacidad suficiente, no transcribió correctamente lo que él había declarado. No tiene razón el apelante. Al admitirse la prueba de *rebuttal*, presentada por el fiscal, él pudo solicitar de la corte que le permitiera ofrecer prueba de *surrebuttal*. Es posible que la corte hubiera permitido tal prueba. 64 C.J. 157, sec. 178; 53 Am.

Jur. 108, sec. 122; VI Wigmore *on Evidence* 517, sec. 1874. El acusado no hizo súplica alguna a ese efecto, sino que se conformó con insistir en que la prueba de *rebuttal* era inadmisible.

Sobre la capacidad del taquígrafo ya éste había declarado extensamente a repreguntas del letrado de la defensa y si bien admitió que al actuar como taquígrafo de récord en dos ocasiones en corte abierta había tenido pequeñas dificultades, aclaró que ello se debió no a que él no pudiera transcribir sus notas sino a que no había podido hallar prontamente las preguntas que se le pedían leyera al tribunal. Manifestó además que una cosa es trabajar como taquígrafo repórter en corte abierta y otra servir como taquígrafo de un fiscal.

Por otra parte, no se trataba en verdad de una confesión hecha por el acusado, sino meramente de una declaración prestada por éste, en la cual si bien admitía haber dado muerte a Monserrate Rivera, sostenía que lo había hecho en defensa propia. Su versión de lo ocurrido, sin embargo, no era igual a la dada por los dos testigos que habían declarado en su favor. Nada había, en su consecuencia, que impidiera al fiscal presentar entonces la declaración del acusado como prueba de *rebuttal*. *Pueblo* v. *Méndez*, 64 D.P.R. 196. Bajo estas condiciones tampoco erró la corte al admitir como prueba de *rebuttal* la declaración del acusado.

El cuarto y último error señalado por el apelante es que la corte inferior erró al declarar culpable al acusado, toda vez que el veredicto del jurado no estuvo sostenido por la prueba. La de El Pueblo tendió a demostrar que como a las diez y media de la noche del 27 de junio de 1946 llegaron en automóvil a un sitio conocido con el nombre de Guanajibo Beach Club, los acusados Pedro López Muñiz y Otilio Marrero, acompañados de José Román Bonet, Rosa Elba Ramírez y Angélica Rivera; que el vehículo era conducido por el chófer Efraín Álvarez Álvarez; que José Román Bonet, quien estaba borracho y se hallaba en uno de los reserva-

dos, formó una discusión con Angélica Rivera y le torció un brazo a ésta, dándole ella a él con una botella en la cabeza; que Monserrate Rivera, quien se hallaba en otro reservado, intervino y se formó entonces una pelea entre éste y José Román Bonet; que la pelea que comenzó dentro del *cabaret* continuó en la carretera, interviniendo en ella otras personas y terminando poco después; que los acusados y sus acompañantes se fueron entonces para Mayagüez, regresando al Guanajibo Beach Club como dos horas más tarde, en compañía de un tal Reyes Negrón Correa, conocido por Achiotón; que al llegar al establecimiento se le preguntó a su dueño, Diego De Jesús Nieves, si podían entrar y al contestarle éste afirmativamente ellos así lo hicieron; que poco después llegó Monserrate Rivera, quien también se había ido, y pidió un vaso de ron y al asomarse al reservado donde estaban los acusados, Otilio Marrero le lanzó un golpe con un cuchillo que tenía; que Monserrate Rivera le lanzó un puñetazo y agarró a Marrero la mano en que tenía el cuchillo; que forcejeando por obtener posesión del cuchillo Rivera y Marrero salieron a la carretera y que entonces el acusado López Muñiz le pidió a Achiotón un revólver negro que éste tenía y le hizo a Rivera cinco o seis disparos, tres de ellos mientras Rivera se hallaba tendido en el suelo.

La prueba de la defensa corrobora lo relatado por los testigos de cargo en relación con el primer altercado en el cabaret y varía respecto a lo sucedido en la segunda ocasión en que los acusados y sus acompañantes se encontraron nuevamente con Monserrate Rivera, siendo la versión de la defensa en cuanto a este segundo incidente, que no fué Otilio Marrero quien atacó a Monserrate Rivera con un cuchillo sino que, por el contrario, fué Monserrate Rivera quien al ver a Marrero le lanzó una cuchillada; que fué Marrero quien agarró la mano a Rivera con el propósito de quitarle el cuchillo; que al forcejear por éste y al bajar a la carretera unas ocho personas le cayeron encima a Marrero y que al caer éste al suelo todos le daban con los pies; que mientras esto ocurría

y estando Marrero indefenso en el suelo, sonaron varios disparos hechos por personas no identificadas, en dirección de la Escuela Correccional hacia Mayagüez y que en vista de ello el acusado López Muñiz, para repeler la agresión, disparó hacia el sitio donde salieron los disparos.

En juicios celebrados ante jurado éste es el juez de los hechos y el llamado a aquilatar la prueba. Su apreciación no será revocada por nosotros a no ser que se nos convenza de que al hacerlo cometió manifiesto error o actuó movido por pasión, prejuicio o parcialidad. *Pueblo* v. *Rivera*, 67 D.P.R. 194, 202. A nuestro juicio hay suficiente prueba en los autos para justificar el veredicto del jurado y no se nos ha convencido de que éste al rendir el mismo actuara movido por pasión, prejuicio o parcialidad.

En los casos de portar armas e infracción a la Ley sobre registro de armas no se ha radicado alegato de clase alguna. Esto de por sí basta para que no consideremos las apelaciones en ellos interpuestas.

*Deben confirmarse las sentencias apeladas.*