EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARÍA VÁZQUEZ COLÓN y ARCADIO RODRÍGUEZ RODRÍGUEZ, c/p ARCADIO RODRÍGUEZ AYALA, acusados y apelante el segundo.

Número: CR–62–273   Resuelto: 15 de marzo de 1963

*Gustavo L. Marrero Ledesma,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM:  ■ El apelante fue convicto de infringir la Sec. 4 de la Ley Núm. 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1250. Apeló y señala como errores (1) que la sentencia es contraria a derecho por no haber prueba en su contra y (2) que el tribunal de instancia actuó movido por pasión, prejuicio y parcialidad.

Hemos examinado cuidadosamente la transcripción de evidencia y autos del caso y no encontramos mérito en esos señalamientos. En cuanto al primero: El policía Rafael Oyola, quien intervino en el allanamiento, declaró que en la habitación donde vivía el acusado con su concubina encontró, en la solera del cuarto, una bolsa de papel que contenía el material de bolita que fue identificado en el juicio como 28 listas de números en papel blanco, diez listas en papel de estraza, nueve libretas de bolipool impresas, y una libreta tipo "scratch pad" también con números de bolita. El letrado defensor estuvo dispuesto a estipular que si los otros dos policías que intervinieron en el allanamiento fuesen llamados a declarar, declararían lo mismo que el policía Oyola. (T.E. pág. 26.)

La testigo Rosa María Rosario, de 21 años, que incurrió en una serie de contradicciones obviamente con el propósito de defender al acusado, contestó como sigue al fiscal mostrarle el material de bolita en cuestión:

"P.—¿Jóven, mire a ver qué es esto que le estoy mostrando a usted? ¿Lo está viendo?

R.—Sí señor.

P.—¿Lo ha visto usted antes de hoy?

R.—Sí señor. Lo he visto.

P.—¿En poder de quién?

R.—De Cayo.

P.—¿Quién es Cayo?

R.—Arcadio Rodríguez.

P.—¿Dónde está él?

R.—Ese señor. (Señala al acusado).

P.—¿Cuándo lo vió usted en poder de él? ¿En qué fecha fue que usted lo vió en poder de él?

R.—El día 7.

P.—¿El día 7 de qué?

R.—De enero.

P.—¿De este año?

R.—Sí señor." (T.E. pág. 64.)

La misma testigo antes mencionada, a preguntas esta vez del letrado defensor, contestó como sigue:

"P.—Mire niña. Todos nosotros queremos que usted diga la verdad. Aquí lo que se está buscando es la verdad para ajusticiar a este señor y a la señora. ¿Si usted lo sabe, a qué se dedicaba este señor?

R.—Pues. A eso.

P.—¿Qué es "a eso".?

R.—A los papeles esos." T.E. pág. 71.

No hay duda que había prueba suficiente en contra del acusado y de que éste fue conectado con ella. *Pueblo* v. *Burgos*, 73 D.P.R. 202 (1952); *Pueblo* v. *Viruet*, 80 D.P.R. 302 (1958).

El segundo error señalado tampoco se cometió. El juez que presidió el proceso le hizo unas preguntas a la testigo Rosario. Se trataba de una testigo que había incurrido en unas contradicciones claramente intencionales y el magistrado trató de esclarecer los hechos, a lo cual tenía perfecto derecho. *Pueblo* v. *Rivera*, 71 D.P.R. 124, 128 (1950). Como los jueces no son testigos oculares de los hechos que juzgan, sino que la información que les llega es necesariamente de segunda mano, ellos pueden hacer preguntas para aclarar los hechos. ¿Cómo podrían esperarse sentencias justas si se les veda a los jueces del Tribunal de Primera Instancia la manera de resolver dudas mediante la formulación de preguntas? Es sólo la intervención desmedida e injustificada la que puede dar lugar a la imputación de parcialidad.

*Concluimos, pues, que no se cometieron los dos errores señalados y que la sentencia dictada por el Tribunal Superior, Sala de Arecibo, en este caso en 30 de marzo de 1962, debe ser confirmada.*