EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARTÍN MARTELL CAJIGAS, acusado y apelante.

*Número:* CR-62-277    *Resuelto:* 26 de junio de 1963

*Ángel Viera Martínez,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: Martín Martell Cajigas fue acusado y convicto del delito de tentativa de violación y fue sentenciado a la pena de 3 a 7 años de presidio. La sentencia le fue suspendida sujeta a las condiciones indicadas en la misma. Señala trece errores en la apelación interpuesta.

1.—El primer error se refiere a que la frecuente e innecesaria intervención del juez sentenciador, interrogando testigos, argumentando y comentando al resolver varios incidentes, lesionó el derecho del apelante a un juicio imparcial y justo.

■ Hemos examinado con sumo cuidado y ponderación el récord de los distintos incidentes ([1]) a que en conjunto se hace

---

([1]) (a) Al efecto apunta la intervención del juez durante el interrogatorio por el fiscal de la perjudicada para aclarar que el acusado le preguntó si ella trabajaba en el Professional Building y ella le dijo que trabajaba en la farmacia. Se alegó que la intervención era innecesaria porque a preguntas del fiscal la testigo había declarado sobre ese asunto. No se hace ninguna imputación de perjuicio. Creemos que la intervención estaba justificada dentro de la facultad que tiene el tribunal de hacer preguntas para esclarecer los hechos. *Pueblo* v. *Rivera,* 71 D.P.R. 124, 128 (1950), cf. *Pueblo* v. *Aletriz,* 85 D.P.R. 646 (1962).

(b) Se señala la expresión del juez "¿Qué más?" interrumpiendo el interrogatorio del fiscal en varias ocasiones, así como otras preguntas del juez durante dicho interrogatorio objetadas como perjudiciales, las que iban dirigidas a esclarecer hechos y no fueron perjudiciales al acusado. *Pueblo* v. *Vázquez Colón,* 87 D.P.R. 734 (1963); *Pueblo* v. *Rivera,* supra; *Pueblo* v. *León,* 53 D.P.R. 429 (1938).

(c) Que el juez sentenciador intervino en el contra-interrogatorio de la perjudicada y no permitió que éste se extendiese sobre ciertos asuntos, sin que el fiscal hubiese hecho planteamiento u objeción alguno y que en otras ocasiones el juez sentenciador no permitió preguntas por haber sido contestadas previamente antes que mediara objeción del fiscal. La intervención del tribunal en la forma indicada constituía una actuación dentro

referencia para sostener el error apuntado. Concluimos que, si bien el juez sentenciador intervino en varias ocasiones durante el interrogatorio de testigos, lo hizo con fines de acelerar, evitar abultar el récord y esclarecer la prueba. Sus distintos dictámenes *motu proprio* no constituyen la actuación más aconsejable de un tribunal en la dirección de una causa criminal. Si bien es preferible que el juez sentenciador evite en lo posible intervenir tan activamente en el interrogatorio de los testigos, el récord no demuestra que lo hiciera para

---

de su facultad discrecional y no perjudicó a la defensa. *Pueblo* v. *Saltari*, 53 D.P.R. 893 (1938).

(d) Que el tribunal de instancia limitó la repregunta de la perjudicada en momentos en que la defensa se proponía impugnarla, mostrándole su contestación a un interrogatorio dada por aquélla referente a una demanda instada por ella basada en los mismos hechos de la causa criminal. Convenimos con el Procurador General que lo que hizo el tribunal fue limitar el tiempo adicional con que contaría la defensa en su turno de contrainterrogatorio después de haber consumido día y medio en esa faena, siendo discrecional en el tribunal limitar los turnos en el examen de testigos. No habiendo abusado de esa discreción, el tribunal no incurrió en error. *Pueblo* v. *López*, 71 D.P.R. 1, 4 (1950); *Pueblo* v. *Pellicier*, 56 D.P.R. 882 (1940); *Pueblo* v. *Santiago*, 16 D.P.R. 469 (1910).

(e) Que el tribunal declaró con lugar la objeción del fiscal a que un testigo declarase que la perjudicada se tapaba la cara porque "Ella quería que no le vieran la cara" mientras que permitió a ese mismo testigo concluyera a pesar de las objeciones de la defensa, que la perjudicada "pedía auxilio desesperadamente" y a otro testigo declarar que ella sintió a la perjudicada "angustiosa"; en otras ocasiones intervino el tribunal innecesariamente durante el interrogatorio del fiscal; en otra ocasión el tribunal, sin la previa objeción del fiscal, no permitió una pregunta relacionada con una declaración previa porque si se trataba de impugnar al testigo tenía que darle la declaración primeramente de acuerdo con la doctrina sentada en *Pueblo* v. *Lebrón*, 61 D.P.R. 657, 672 (1943), alegando la defensa que estaba sentando primero las bases para ver si de la declaración a la pregunta había bases suficientes para entonces poder confrontar al testigo con la declaración en relación con el hecho de si al testigo se le había preguntado cuando prestó declaración originalmente si la perjudicada tenía aliento a licor o si esto se lo preguntaron en algún momento después. En otra ocasión intervino el tribunal para repetir lo dicho por un testigo de que pudo haber olvidado que la perjudicada le dijo que el acusado la molestaba, añadiendo el tribunal que previamente el testigo había declarado que no se recordaba, que el récord contiene ya la contestación a la pregunta que se le formula y por lo tanto el tribunal no permitirá que se abulte el récord innecesariamente. En otra ocasión en que la defensa contrainterrogaba a un testigo sobre hechos declarados

contradecir o desacreditar a testigo alguno o que la intervención llegase al extremo de producir prejuicio en la mente del jurado. Ciertamente la actuación del juez sentenciador en este caso no fue tal que dé lugar a concluir que "el juez desempeñó en este caso con gran habilidad la misión que la ley le reserva al fiscal", como dijimos en *Pueblo* v. *Aletriz,* supra. No tenemos ante nos en este caso un récord claro e indubitable de una actuación del tribunal sentenciador que privase al acusado de un juicio justo e imparcial, como resultó aparente en *Aletriz,* supra; *Pueblo* v. *Bartolomei,* 70 D.P.R. 698 (1949); *Pueblo* v. *Acevedo,* 35 D.P.R. 966 (1926).

2.—Se señala como segundo error que cuando, para fines de impugnación, la defensa confrontó a la testigo Socorro

en corte y no en la declaración del testigo antes del juicio, el tribunal *motu proprio,* preguntó al testigo cuál era la actitud de la perjudicada cuando el testigo se acercó al automóvil en que aquélla se encontraba, no obstante objetarse por la defensa a base de que el fiscal no tenía ninguna otra pregunta y cuanto se preguntó estaba cubierto en el examen directo (cuando el testigo declaró que la vio nerviosa) contestando el testigo a instancias del tribunal que "Ella estaba nerviosa y llorando." En otra ocasión el tribunal *motu proprio* declaró sin lugar una solicitud de la defensa para que el fiscal le entregase la declaración de un testigo hecha al fiscal sobre los hechos que declaró en el juicio. Luego el tribunal inquirió del fiscal si tenía objeción a entregar la declaración y éste contestó que sí. Se trataba de un testigo renunciado por el fiscal y traído a declarar por la defensa. En otra ocasión, el fiscal trató de impugnar el mismo testigo, leyéndole parte de su declaración anterior y el tribunal objetó la manera de impugnarlo sosteniendo su determinación, no obstante la insistencia de la defensa en que el fiscal le preguntase todo.

(f) Que se admitió prueba no obstante la objeción de la defensa de ser de referencia, consistente en el testimonio del propio fiscal, testigo de la defensa, al efecto de que fue con la testigo principal al negocio de María Luisa Benítez a hablar con ella sobre los hechos del caso; a preguntas de un representante del ministerio público declaró el fiscal que la Benítez informó no haber visto jamás a la perjudicada y que ésta le dijo: "Pero mire señora, una niñita que había aquí me trajo agua . . ." El tribunal admitió la declaración porque la defensa había interrogado al testigo si fue allí, a qué, y con quién. Cuando la defensa preguntó a su testigo María Luisa Benítez, sobre las condiciones de su negocio previamente calificadas como "de malísima apariencia" en el testimonio del fiscal como testigo de la defensa, objetó el fiscal y el tribunal dijo: "La testigo es de la defensa. ¿ Quiere impugnarla?" y sostuvo la objeción. Surgió otro incidente con esta misma testigo al repreguntarle el fiscal si después de su primer matrimonio

Avilés con su declaración ante el fiscal, el tribunal resolvió que no había contradicción, ya que la determinación de si había o no contradicción es de la exclusiva incumbencia del jurado, por tratarse de una cuestión de hecho.

■ Dicha testigo, la perjudicada en el caso, había testificado que ella le había dicho al acusado que era farmacéutica práctica. La defensa la confrontó con su declaración anterior de si ella le había dicho esto al acusado o "alguien se lo había dicho (al acusado)". A los fines de si la defensa podía o no utilizar la declaración, el tribunal dictaminó que no existía contradicción entre dicha declaración y el testimonio de la testigo. En *Pueblo* v. *Olivencia*, 54 D.P.R. 908, 927 (1939), dijimos, en circunstancias muy análogas que "Hubiera sido

___

había vivido con otros hombres. El tribunal determinó que podía averiguar el historial de la testigo a pesar que en la ocasión en que la defensa preguntaba a la perjudicada si su hermana Antonia era soltera o casada, el tribunal resolvió que era inmaterial. Al contestar la testigo que la referida pregunta era impropia, el tribunal le dijo "Eso no tiene que decirlo la testigo. Se sostiene la objeción de la defensa." Del récord aparece que la defensa hizo constar que el tribunal se dirigió al testigo en forma acalorada y que el tribunal hizo constar que le estaba llamando la atención a la testigo en forma enérgica y también al abogado de la defensa. Esta misma testigo en contrainterrogatorio manifestó al fiscal "es que usted me ha complicado con las preguntas anteriores. Yo voy a empezar de nuevo." El tribunal no lo permitió, dictaminando que "no va a permitir que ella repita lo que ha declarado."

(g) Que en una ocasión el tribunal sostuvo la objeción del fiscal a una pregunta sobre interrupciones en el servicio de fuerza eléctrica de acuerdo con los récords por sugestiva y porque los récords son la mejor prueba, mientras que sostuvo la pregunta del fiscal al efecto de cuáles son más frecuentes, las interrupciones en los hogares o en el servicio público no obstante alegar la defensa que los récords constituyen la mejor prueba.

(h) El último incidente citado por la defensa como demostrativo de la actitud objetable y parcial del tribunal de instancia consistió en denegar la admisión solicitada por la defensa de la declaración previa del testigo de la defensa Osvaldo Barreras, renunciado por el fiscal, admisión que se solicitó como parte de un incidente en que se pidió por la defensa se le entregara esa declaración y se le negó por el tribunal; ofrecida dicha declaración por el fiscal como prueba de refutación, con el propósito de impugnar al testigo a quien se le dio la declaración durante su interrogatorio para que la examinara, se admitió, a pesar de la objeción de la defensa, porque se le preguntó al testigo con respecto al contenido de la declaración en posible pugna con su testimonio.

mejor que el juez no hubiera expresado opinión alguna . . . pero sus otras manifestaciones—expresivas después de todo de la verdad—no pudieron perjudicar ni hay el más leve indicio que demuestre que perjudicaran a los acusados." No se cometió el error apuntado.

3.—El tribunal sentenciador cometió error al limitar la repregunta de la testigo Socorro Avilés, y con ello impedir que la defensa la impugnara, quebrantándose así el derecho a un juicio imparcial y justo.

■ Hemos relacionado el incidente que motiva esta imputación de error en el inciso (d) del escolio 1 de esta opinión. Nos reafirmamos ahora en que no se incurrió en este error.

4.—El tribunal sentenciador incurrió en error al no permitir que la defensa sentara las bases para impugnar a la testigo Blasina B. de Cruz.

■ El error no se cometió, pues se trataba de impugnar el testimonio de la testigo al efecto de que no notó que la perjudicada tuviese aliento a licor inquiriendo si se le preguntó eso cuando prestó su primera declaración por escrito o se le preguntó en algún momento después. El juez sentenciador dictaminó *motu proprio* que como se trataba de impugnar a la testigo había que darle a leer su declaración de acuerdo, con razón a nuestro juicio, con la norma que establecimos en *Pueblo* v. *Lebrón*, supra.

5.—El tribunal sentenciador incurrió en error al no permitir que la defensa impugnara el testimonio de la perjudicada Socorro Avilés con los testigos Luis Berríos, Elmo Cabán y María Luisa Benítez.

■ En cuanto al testimonio de tales testigos, se trata de varias preguntas que, objetadas por el fiscal, fueron declaradas sugestivas y no admitidas por el tribunal, a nuestro juicio correctamente.

6.—Incurrió en error el tribunal sentenciador al permitir que el fiscal diera una declaración al testigo de cargo Celestino Cruz Milles, para refrescar la memoria.

En repregunta de este testigo suyo, al no recordar el testigo que la perjudicada le hablara sobre algo, el fiscal le dio a leer una declaración previa del testigo de la cual había pasado copia a la defensa, y anunció que era para refrescar su memoria. Con la oposición del abogado del acusado, el tribunal de instancia permitió que se refrescase la memoria del testigo con dicha declaración. En apoyo de la imputación de este error se cita el Art. 154 de la Ley de Evidencia, 32 L.P.R.A. sec. 2146 y el caso de *Castro* v. *González*, 58 D.P.R. 368, 378 (1941). Aunque en el caso civil que acabamos de citar dijimos que: "la declaración del fiscal no puede considerarse como el memorándum a que se refiere la Ley de Evidencia", en casos criminales en California, de donde proviene la citada disposición, se han considerado declaraciones previas del testigo ante un funcionario investigador o el Gran Jurado, para refrescar la memoria de aquél. *People* v. *Selby*, 198 Cal. 426 (1926); *People* v. *Durant*, 116 Cal. 179 (1897); *People* v. *Page*, 28 Cal. App.2d 642 (1938). De todos modos no aparece claramente del récord que de haberse cometido el error apuntado, el mismo haya perjudicado los derechos sustanciales del acusado.

7.—Erró el tribunal al permitir que testigos de cargo dieran conclusiones en cuanto al estado de ánimo de la perjudicada.

La defensa objetó que el testigo Celestino Milles, al ser preguntado por el fiscal sobre la forma en que la perjudicada pedía auxilio, respondió que ésta lo hacía "desesperadamente", y que la testigo Blasina B. de Cruz respondió que al llegar la perjudicada a su casa "la sintió angustiosa" refiriéndose a su estado de ánimo. Sostiene la defensa de que éstas son opiniones y no debieron admitirse. No tiene razón. Se trata de declaraciones sobre el estado de ánimo de la perjudicada que el tribunal de instancia en su sana discreción admitió por tratarse de materias que están al alcance de

la observación o experiencia del testigo y que son percibidas por los sentidos, *Pueblo* v. *Rivera*, 79 D.P.R. 742, 749 (1956).

8.—Incurrió en error el tribunal sentenciador al permitir que el fiscal ofreciera prueba de referencia a través del policía Isabelo Román Díaz.

El tribunal de instancia permitió, no obstante, la objeción de la defensa, que dicho policía testificase que la perjudicada le dijo que "el acusado le había llevado a distintos sitios . . . donde la había golpeado" y "por último la llevó a una urbanización . . . donde había tratado de ultrajarla" y luego siguió ofreciendo otra prueba de referencia. Al admitir tal testimonio el tribunal incurrió en error, pues dicha declaración no cualificaba como prueba del *"res gestae"* ya que la perjudicada había hecho esa manifestación previamente a otros testigos. La propia perjudicada y otros testigos ya habían testificado sobre los mismos extremos independientemente de este testimonio. La regla de *Pueblo* v. *Fournier*, 77 D.P.R. 222, 259, 260, 261 (1954), invocada por la defensa no es de aplicación, pues allí se trataba de la admisión de una confesión obtenida bajo coacción. En este caso no está en controversia ninguna confesión. Siendo la acusación en este caso por el delito de tentativa de violación y no siendo necesaria, por consiguiente, prueba de corroboración alguna, el testimonio de la perjudicada no requería prueba adicional alguna, de ser creído y ser suficiente en derecho para la convicción.

9.—El fiscal sentó las bases para impugnar al testigo Osvaldo Barreras afirmando que éste le había dicho al acusado "que lo iba a ayudar" y luego no ofreció prueba para establecer ese hecho, y también sentó las bases tendientes a establecer que la testigo de defensa, María Orangert gozaba de mala reputación y tampoco trajo prueba para sostenerlo; prejuzgando ante el jurado de esta manera a estos dos testigos.

■ El fiscal renunció al testimonio de Barreras. La defensa lo utilizó. En la repregunta, el fiscal le preguntó: "Mire a ver si no es cierto que cada vez que hay un receso en este juicio Ud. habla con él [el acusado] . . ." Contestó que "A veces". Continuó el fiscal: "¿A veces o siempre? Mire a ver si ud. no le dijo: 'Yo te voy a ayudar' ". Contestó el testigo que no y a insistencia del fiscal declaró que esa negativa la hacía bajo juramento. No hubo objeción por parte de la defensa. El incidente relacionado con la testigo María Orangert consistió en el fiscal preguntarle, en su turno de repregunta (luego de ella haber declarado que trabajaba en un bar casi frente a la farmacia del Professional Building), dónde trabajaba la perjudicada y que en la tarde de los sucesos que motivaron esta causa el acusado fue al bar y de allí se hizo señas con la perjudicada y luego ambos se fueron en el automóvil de aquél, y que le dijo al acusado que estaba dispuesta a ir a las autoridades, que si el acusado no le dijo "Bueno, como usted conoce estos bretes, vaya donde el Fiscal", hecho que la testigo negó. Luego el fiscal le preguntó si su contrato de trabajo en el referido bar "era que si venía alguien y la invitaba a salir usted se iba" hecho que también negó la testigo. El tribunal de instancia sostuvo la única objeción de la defensa durante esta parte del interrogatorio, a la pregunta del fiscal de si durante su empleo en el bar ella "no salió con nadie". Para sostener el error se cita el caso de *Pueblo v. Díaz*, 74 D.P.R. 375, 392 (1953). Es evidente que el récord no demuestra que el fiscal atropellase a estos testigos ni que se dirigiese a los mismos en forma abusiva. Aunque pudiera decirse que en las preguntas del fiscal hubiese un elemento de incriminación, no se ha demostrado que su conducta causó perjuicio en la mente del jurado y que el juicio no ha sido justo e imparcial.

10.—Erró el tribunal al no ordenar al fiscal que entregase las declaraciones de los testigos de cargo Osvaldo Barreras, Luis Berríos y Elmo Cabán, renunciados por el fiscal y llama-

dos a declarar por la defensa cuando ésta las solicitó; y al no admitir finalmente la declaración de Osvaldo Barreras ofrecida por la defensa después que el fiscal se la dio para que la leyera y al admitirla en refutación por parte del fiscal.

La solicitud hecha por la defensa al efecto de que se le entregaran las declaraciones de estos testigos tan pronto el fiscal renunció a los mismos fue propiamente denegada. *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962); *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23 (1963). Después de la declaración de Osvaldo Barreras, como testigo de la defensa, ésta le preguntó si había prestado declaración jurada sobre los hechos y contestó que sí. La defensa solicitó nuevamente esa declaración y el juez sentenciador *motu proprio* se la denegó. A preguntas de la defensa, el testigo dijo que no necesitaba la declaración para determinar si en ella constaba todo lo que él le había dicho al fiscal. En el curso de su repregunta el fiscal le dio a leer a este testigo su declaración anterior y luego, a preguntas del fiscal declaró que la perjudicada le había dicho "que un individuo la había conducido al Monte ese y trató de ultrajarla pero que ella pudo escapar y fue allí que ella llegó a la casa de la hermana mía y que él informó a la policía esto que ella le dijo". Una vez confrontado el testigo con su declaración por el fiscal, la defensa solicitó se admitiese en evidencia la referida declaración para que el jurado conociera la totalidad de la declaración y pudiera darse cuenta de si el testigo omitió voluntaria o involuntariamente a la defensa un hecho vital o determinar si el testigo por alguna razón guarda reservas con relación a su declaración. El fiscal se opuso y el tribunal no la admitió pero luego la admitió a instancias del fiscal para impugnar al testigo. Se alega no era admisible para impugnar pues al confrontarse con la declaración, el testigo no negó la relación de los hechos que había hecho en ella; que más bien se trataba de un testimonio sobre hechos omitidos en la declaración, o sea que durante el juicio el testigo testificó que la perjudicada le había dicho que ella

no quería hacerle daño a nadie y esto no aparecía de la declaración y que no testificó sobre hechos relatados en la declaración. Creemos que el tribunal incurrió en error al no admitir la declaración a petición de la defensa, de acuerdo con la norma establecida en *Pueblo* v. *Pacheco*, 83 D.P.R. 526, 535–538 (1961). Sin embargo, el error no fue perjudicial ya que el objetivo de la defensa de que la declaración fuera al jurado en su totalidad se logró. Además, hay en el récord prueba independiente que sostiene el veredicto de manera que la forma en que se admitió la declaración jurada en cuestión no le ha causado perjuicio sustancial al acusado. Sentencia en *Pueblo* v. *Cotto Torres*, supra; *Pueblo* v. *Pacheco*, supra.

El tribunal erró al no permitir que el fiscal entregara a la defensa copia de la declaración del testigo Luis Berríos, renunciado por el fiscal, una vez que éste testificó para la defensa. *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962). Convenimos con el Procurador General que este error no ocasionó perjuicio sustancial al acusado. Al efecto expone el Procurador General en su memorándum, lo siguiente:

". . . Sin embargo, alegamos que a la situación del presente caso le es aplicable el criterio judicial consignado en el caso de *Pueblo* v. *Félix Ramos Cruz*, resuelto el 5 de marzo de 1962, al efecto de que la comisión de un error que ordinariamente conlleva la revocación de la sentencia no produce la revocación si concurren circunstancias especialísimas que hagan inaplicable el principio. Es en cierta medida el viejo criterio de que un error no perjudicial no produce la revocación de una sentencia. Cf. *Pueblo* v. *Cruz Jiménez y otros*, resuelto el 25 de enero de 1963.

"La prueba de cargo en el presente caso fue abundante. El testimonio del testigo Luis Berríos no envuelve ninguna cuestión fundamental de los hechos de este caso. Al ser preguntado por la defensa si había manifestado en la declaración jurada lo mismo que decía en la corte el testigo respondió que 'casi todo' (T.E. págs. 736–737). No fue impugnado por el Fiscal. Este Hon. Tribunal no ha resuelto que el mero hecho de no entregar al acusado copia de una declaración jurada prestada al fiscal infringe los

preceptos básicos del debido procedimiento de ley, sino que ha sostenido que la cuestión es una sobre el conocimiento de toda la verdad para que se haga verdadera justicia. *Pueblo* v. *Ribas, supra,* pág. 389. El acusado apelante no ha señalado los perjuicios que le causara el alegado error del tribunal sentenciador. En el caso de *Pueblo* v. *Desiderio Díaz Díaz, supra,* este Hon. Tribunal sostuvo lo siguiente:

'Aquí el testigo renunciado por el fiscal presta testimonio y aunque ha sido presentado por la defensa nada más razonable que el acusado tenga la oportunidad de examinar la declaración *para determinar si lo declarado durante el juicio coincide en sus aspectos esenciales con lo que manifestó anteriormente.* Esto está en armonía con la tesis de que *lo que se intenta es descubrir la verdad* para poder hacer verdadera justicia.' (Subrayado del Procurador General.)

"Ante estas circunstancias, la única forma en que podría causársele perjuicio al acusado sería si el testimonio del testigo es incriminatorio y la negativa del tribunal a que se entregue al acusado una declaración jurada en manos del fiscal priva a aquel de un medio eficaz para impugnar al testigo. Pero aquí el acusado apelante no señala el carácter incriminatorio del testimonio del testigo Luis Berríos. Evidentemente no lo es. Por el contrario resulta beneficioso al acusado. Este testigo no establece que el acusado apelante agrediera a la perjudicada en el Hotel El Bosque como fuera el tenor del testimonio de ésta. (T.E. págs. 115 y siguientes y 272 y siguientes.) El testigo declara que fue a quitar la cadena para que el carro saliera (T.E. pág. 731). La prueba aportada por el testimonio de la perjudicada fue al efecto de que el acusado apelante 'dio riversa violentamente al carro, rompió el borde de un sitio allí y salió inmediatamente de allí'. (T.E. pág. 119.) También el testigo declaró que aquella joven (refiriéndose a la perjudicada) no hizo nada y preguntado cómo salió el automóvil del lugar manifestó que 'poquito a poco'. (T.E. pág. 732.) Es importante señalar, además, que esta escena de la entrada del acusado apelante con la perjudicada a un hotel o motel se repite varias veces según la prueba, en otros lugares y ante otras personas también testigos en el caso. (T.E. págs. 120 y siguientes 125 y siguientes, etc.) Consideramos que nada provechoso para su causa hubiera conseguido el acusado apelante con la entrega de la declaración jurada del testigo Luis Berríos a

la defensa. El acusado apelante no necesitaba impugnar dicho testigo cuando todo su testimonio resultó muy favorable a su teoría de defensa y contradictorio a la prueba incriminatoria creída por el jurado. Aplicar la regla del caso de *Pueblo* v. *Desiderio Díaz Díaz,* supra, ante las presentes circunstancias sería más bien un ejercicio geométrico que un esfuerzo por conseguir el brillo de la verdad, cual es la razón de la regla. En el caso de *Pueblo* v. *Cotto Torres,* supra, el Juez Asociado señor Santana Becerra sostiene separadamente que el acusado debe tener derecho a las declaraciones juradas en poder del fiscal desde que los testigos son renunciados por el fiscal. Sin embargo, 'a la luz de todos los hechos y demás circunstancias presentes' en el caso, considera que la negativa a ordenar la entrega de dichas declaraciones no constituyó perjuicio sustancial al acusado. Es evidente, entonces, que la regla depende de los hechos y circunstancias en cada caso y no procede que se aplique en forma mecánica e inflexible."

El incidente con respecto al testigo Elmo Cabán se discutirá al considerar el error número trece.

■ 11.—Incurrió el tribunal sentenciador en error al no admitir en evidencia una declaración prestada por el policía Manuel Velázquez, testigo de la defensa, ante el fiscal y que usó para impugnarlo y erró el tribunal al admitirla luego como prueba de refutación del ministerio público.

12.—Incurrió el tribunal sentenciador en error al permitir al fiscal preguntar al policía Manuel Velázquez, testigo de defensa, sobre el contenido de otra declaración escrita sin presentar dicha declaración que sería la mejor evidencia.

El tribunal sentenciador incurrió en el error apuntado bajo el número once, según hemos demostrado en la consideración del incidente relacionado con el testimonio y la declaración jurada del testigo Osvaldo Barreras bajo el error número diez anterior. La declaración a que se refiere el error número 12 fue prestada por el testigo ante el Inspector General de la Policía en relación con la amistad del testigo con la perjudicada y su hermana Antonia. Este testimonio fue dado a preguntas de la defensa. Luego, a pregunta del fiscal,

declaró el testigo que esa declaración fue en relación con prendas y pertenencias de la perjudicada y que nunca las había tenido.

No creemos que el error número 11 haya perjudicado sustancialmente al acusado ya que la declaración fue presentada en evidencia y se cumplió el propósito de la defensa de que el jurado pudiese considerar la totalidad de la misma. El señalamiento de error referente a la declaración prestada por el testigo Velázquez ante el Inspector General no señala perjuicio alguno sufrido por el acusado. Asumiendo que se hubiese incurrido en este error, la prueba aducida a través de las preguntas del fiscal referentes a la referida declaración no pudieron causar perjuicio sustancial alguno al acusado.

13.—Incurrió en error el tribunal sentenciador al dar instrucciones contradictorias con relación a la declaración del testimonio de Elmo Cabán ofrecida por el fiscal para impugnar y ofrecida por la defensa como prueba.

Como testigo, renunciado por el fiscal, declaró por la defensa que siendo administrador judicial del Hotel San Antón en la noche de los sucesos en que se basa esta causa, estuvo el acusado por dicho lugar acompañado de la perjudicada y que los vio y le dijo al acusado que no les podía dar alojamiento; que oyó que la perjudicada le decía al acusado que le llevara a su casa, que ella había llevado unas medicinas para su papá y que hiciera el favor de llevarla a su casa lo antes posible; que entonces el acusado se montó en el automóvil y se fueron; que al decir eso la perjudicada se refería al acusado por el pseudónimo de Cuco o Tuto; que prestó declaración jurada sobre estos hechos. La defensa pidió la declaración jurada y le fue negada por el tribunal. Entonces el fiscal, en repregunta, se la dio a leer al testigo y le preguntó si en la misma aparecía el mote de Cuco o Tuto y el testigo contestó que no; que el testimonio del testigo de que vio el automóvil casi metido en la propiedad del hotel no aparece en la declaración. El tribunal, a petición de la defensa, admitió la declara-

ción como parte de su prueba. Más tarde el fiscal la ofreció para impugnar la declaración del testigo Cabán y la defensa expresó que no tenía objeción y, a estos efectos, se admitió. Luego de leída la referida declaración al jurado, el tribunal de instancia instruyó que sólo podía ser considerada y apreciada para impugnar o tratar de impugnar el testimonio de Cabán y, al llamársele la atención por la defensa que la había ofrecido como parte de su prueba, el tribunal instruyó al jurado que "consta del récord que era una declaración para ser considerada por los señores del jurado como toda la otra prueba que se haya ofrecido en este juicio. Eso consta del récord. Ahora, ratifico la instrucción de que al ser ofrecida esa misma declaración por el Sr. Fiscal para fines de impugnación, ustedes en ese momento la pueden considerar a los fines de impugnar la declaración de Elmo Cabán."

Aunque la instrucción podría haber creado alguna confusión en el jurado, no creemos causara perjuicio sustancial al acusado. Se admitió para ambos propósitos sin objeción y la realidad es que servía a ambos fines.

*En virtud de lo expuesto, se confirmará la sentencia.*